**CONSERVATION LAW FOUNDATION, et al., Plaintiffs,**

v.

**Donald EVANS, et al., Defendants.**

**Civil Action No. 01–1134(GK).**

United States District Court, District of Columbia.

April 9, 2002.

---

Russell David Duncan, Coburn & Schertler, Washington, DC, Eric A. Bilsky, Washington, DC, for Conservation Law Foundation.

Eric A. Bilsky, Washington, DC, for Center for Marine Conservation, National Audubon Society, Natural Resources Defense Council.

Samuel D. Rauch, Adam D. Issenberg, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, Lyn Jacobs, U.S. Department of

Justice, Environmental Division, Washington, DC, for William Daley, National Oceanic and Atmospheric Administration, National Marine Fisheries Service.

Lyn Jacobs, U.S. Department of Justice, Environmental Division, Washington, DC, Adam D. Issenberg, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for Donald Evans.

David Earl Frulla, Brand & Frulla, P.C., Washington, DC, for The Associated Fisheries of Maine, Inc., The City of Portland, Maine, The City of New Bedford, Massachusetts, The Trawlers Survival Fund.

Eldon VanCleef Greenberg, Garvey, Schubert & Barer, Washington, DC, for Northeast Seafood Coalition.

Kirsten Engel, Commonwealth of Massachusetts Attorney Generals Office, Boston, MA, for Commonwealth of Massachusetts.

Mark A. Randlett, Office of the Attorney General, Augusta, ME, for State of Maine.

James L. O'Dea, O'Dea & Associates, Washington, DC, for Paul Parker, Craig A. Pendleton, Northwest Atlantic Marine Alliance, Inc., Stonington Fisheries Alliance, Saco Bay Alliance, Cape Cod Commercial Hook Fishermen's Association, Inc.

Jennifer Patterson, Office of Attorney General/NH, Concord, NH, Peter C.L. Roth, State of New Hampshire/Attorney General, Concord, NH, for the State of New Hampshire.

Rhode Island Deparmtnet of Environmental Management, Providence, RI for the State of Rhode Island.

### MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiffs Conservation Law Foundation, Center for Marine Conservation, National Audubon Society, and Natural Resources Defense Council ("Plaintiffs") brought suit against the United States Secretary of Commerce Donald Evans, the National Oceanic and Atmospheric Administration, and the National Marine Fisheries Service ("Defendants"), charging that Defendants failed to prevent overfishing and minimize bycatch[1] along the New England coast.

On December 28, 2001, the Court granted Plaintiffs' Motion for Summary Judgment. The Court determined that Defendants violated the Magnuson–Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq.*, as amended by the Sustainable Fisheries Act ("SFA"), Pub.L. No. 104–297, 110 Stat. 3559 (1996), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Specifically, the Court found that Defendants violated the SFA and APA by failing to implement Amendment 9 of the Fishery Management Plan, thereby violating the overfishing, rebuilding and bycatch provisions of the SFA. The Court further held that Amendment 9 violates the bycatch provisions of the SFA.

The Court must now enter a remedial order. The following parties have intervened in the remedial proceedings: (1) Northeast Seafood Coalition; (2) Associated Fisheries of Maine, the Cities of Portland, Maine and New Bedford, Massachusetts, and the Trawlers Survival Fund; (3) the States of Maine, New Hampshire, Rhode Island, and Massachusetts; and (4) Northwest Atlantic Marine Alliance, Stonington Fisheries Alliance, Saco Bay Alliance, Cape Cod Commercial Hook Fisher-

---

1. Bycatch refers to fish caught incidentally while a fisher is trying to catch fish of a different species. *See* 142 Cong. Rec. S10810 (daily ed. Sept. 18, 1996).

men's Association, Paul Parker, and Craig A. Pendelton.

In light of the summary judgment briefs and the preliminary remedy submissions,[2] it is apparent to the Court that the remedial phase will involve highly technical and scientific issues relating to matters such as the biomass and mortality levels of particular species of fish; the impact such levels have upon the status of the species; the appropriate scientific methodology to calculate such levels; the fishery management measures that will achieve a particular biomass and mortality level; and the effect of the various management measures on each species of fish and the fishing industry. Consequently, the Court has determined that a technical advisor is necessary to teach and instruct the Court. It is important to note that the Court is appointing an expert technical advisor, not an expert witness pursuant to Fed.R.Evid. 706. The necessity of a technical advisor in this case is heightened by the limited time frame in which the Court must make its decision. The parties' final briefs are to be submitted by April 12, 2002, and the fishing season begins on May 1, 2002. Therefore, the Court will have only two weeks in which to evaluate the parties' arguments and issue its remedial order.

## I. Authority to Appoint a Technical Advisor

■ The Court's authority to appoint a technical advisor rests on two independent grounds. First, a district court has the inherent authority to appoint an advisor. Additionally, the Administrative Expenses Act of 1949, 5 U.S.C. § 3109, and the Court Interpreters Act, Pub.L. No. 95–539, § 5, 28 U.S.C. § 602(c), afford the judiciary statutory authority to employ an expert.

In *Reilly v. U.S.*, 682 F.Supp. 150 (D.R.I.1988), the district court conducted an exhaustive examination of the legal principles underlying a court's inherent authority to appoint an advisor. In so doing, the court determined that it possessed the inherent authority to appoint a technical advisor to advise and instruct the court on the economic issues surrounding the calculation of damages for loss of the earning capacity of an infant. The court's determination was affirmed by that circuit, *see Reilly v. U.S.*, 863 F.2d 149 (1st Cir.1988) (district court did not abuse its discretion in appointing technical advisor), and has been followed by courts that have addressed the issue. *See Ass'n of Mexican–American Educators v. State of California*, 231 F.3d 572 (9th Cir.2000) (affirming district court's appointment of technical advisor based on lower court's inherent authority to appoint an advisor).

■ Moreover, there is widespread recognition that courts are increasingly facing complex scientific and technical issues for which they need instruction and greater understanding. As Justice Breyer recognized, "as cases presenting significant science-related issues have increased in number, judges have increasingly found in the Rules of Evidence and Civil Procedure ways to help them overcome the inherent difficulty of making determinations about complicated scientific, or otherwise technical, evidence. Among these techniques are ... the appointment of special masters and specially trained law clerks." *General Electric Co. et al. v. Joiner,* 522 U.S. 136, 149, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (Breyer, J., concurring) (citation omitted). Many of the cases involving these increasingly scientific and technical questions involve evidentiary gatekeeping functions or decisions on summary judgment motions such as those addressed directly by the

---

**2.** Briefing in the remedial phase is not yet complete.

Supreme Court in *Joiner* and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), or, as in this case, the imposition of a remedy whose appropriateness rests on complex scientific data. Explanation from an expert may often assist courts in addressing such scientific questions.

The Administrative Expenses Act of 1949, 5 U.S.C. § 3109, and the Court Interpreters Act, Pub.L. No. 95–539, § 5, 92 Stat.2040, 2044 (1978), 28 U.S.C. § 602(c), provide an additional independent statutory basis for the Court's authority to appoint an expert advisor.

The Administrative Expenses Act grants various departments and agencies that constitute the executive branch the authority to procure the temporary or intermittent services of experts or consultants. *See* 5 U.S.C. § 3109. Section 602(c) of the Court Interpreters Act codifies the authority of the Director of the Administrative Office of the U.S. Courts to employ experts and consultants authorized by 5 U.S.C. § 3109. *See* 28 U.S.C. § 602(c). Section 602(d) provides that "[t]he Director may delegate any of the Director's functions, powers, duties, and authority ... to such officers and employees of the judicial branch of Government as the Director may designate... and may authorize the successive redelegation of such functions, powers, duties, and authority as the Director may deem desirable." *Id.* § 602(d). Therefore, a federal judge possesses statutory authority to appoint an expert when properly designated by the Director or by an officer or employee duly empowered to so designate. In this case, permission has been obtained from the Director's delegates and therefore all statutory requirements have been met.

## II. Procedures for Selecting the Technical Advisor [3]

█ The Court has made every effort to utilize a fair and open procedure for appointing a neutral technical advisor, which includes affording the parties the opportunity to assert any allegations of bias, partiality or lack of qualification.

Upon determining the need for the assistance of a technical advisor, the issue was raised with counsel in open court. The parties were asked to submit the names of potential advisors on whom they agreed. With the substantial assistance of the Director of the Alternative Dispute Resolution Program, Nancy Stanley, a list of 10 technical experts was developed. Each of the groups of parties [4] was afforded the opportunity to strike one name from the list. The parties were afforded two weeks to research the qualifications of most of the candidates and one week to conduct research regarding an additional list of names subsequently submitted by one of the parties.

The Court was thereafter provided with a ranked list of six technical experts (the original list of ten minus four candidates who were struck by a party) from which the Court could select a technical advisor. The individual who the Court has selected as the technical advisor, Dr. Wayne Getz

---

**3.** The Court has been guided in large part by the extremely thoughtful and oft-cited dissent of Judge Tashima in *Ass'n of Mexican–American Educators*, 231 F.3d at 609–615. It should be noted, however, that Judge Tashima did not dissent from the majority's conclusion that the district court had inherent authority to appoint a technical advisor. His dissent relates to the *manner* in which the advisor in that case was appointed and utilized.

**4.** For purposes of developing the list of technical experts, the parties were represented in the following groups: the Plaintiffs; the Defendants; the commercial fishermen; the hook-and-line fishermen; and the states.

of the Department of Environmental Science, Policy and Management at the University of California at Berkeley, was ranked second.

The parties were then afforded an additional opportunity to object to the proposed advisors. The Court specifically requested allegations of any direct conflicts of interest or bias. The parties were afforded one week in which to conduct further investigations regarding the proposed advisors and submit any objections to the Court. Only two responses to the Court's order were filed.

Interveners the Associated Fisheries of Maine, Inc.; the City of Portland, Maine; the City of New Bedford, Massachusetts; and the Trawlers Survival Fund (collectively "AFM") expressed reservations regarding the potential partiality of the expert ranked first on the list of six individuals. The interveners also expressed a preference for Dr. Getz and two other individuals. The Plaintiffs and interveners the States of Maine, Massachusetts, New Hampshire and Rhode Island filed a statement indicating that they did not object to the first three experts on the list of six individuals.

The Court subsequently contacted the top three individuals. Because the first ranked individual indicated that he would not be available to serve as the technical advisor, it was not necessary for the Court to evaluate AFM's concerns regarding his potential partiality. The third individual contacted was also unavailable. Dr. Getz was therefore selected as the Court's technical advisor.

### III. Scope of the Technical Advisor's Duties

■ The scope of the expert advisor's duties will be to answer the Court's technical questions regarding the meaning of terms, phrases, theories and rationales included in or referred to in the briefs and exhibits of any of the parties. He shall be a "tutor who aids the court in understanding the 'jargon and theory' relevant to the technical aspects of the evidence." *Ass'n of Mexican–American Educators*, 231 F.3d at 612 (Tashima, J., dissenting). The advisor shall *not* give any advice to the Court on the ultimate issue of the remedy that is most appropriate in light of the entire record. Given the fact that the Court will have approximately two weeks from the date final submissions are filed to the May 1, 2002 deadline to order a remedy, the Court may only have the opportunity to conduct sporadic but possibly lengthy phone discussions with the technical advisor.

At the conclusion of this phase of the case, when the Court explains its reasons for the remedial order, the Court will summarize the amount and nature of its reliance on the technical advisor.

### IV. Conclusion

Pursuant to the Court's inherent and statutory authority, the Court has obtained a technical advisor to assist the Court in understanding the highly technical and scientific issues that will likely arise in the remedial phase of the case. The manner in which the expert advisor was selected was designed to establish a fair and open procedure for obtaining a neutral advisor.

### ORDER

It is this 8th day of April 2002 hereby

**ORDERED**, that Dr. Wayne M. Getz of the Department of Environmental Science, Policy and Management at the University of California at Berkeley is appointed as the Court's technical advisor pursuant to the terms and procedures detailed in the accompanying Memorandum Opinion.