[No. 664-3.   Division Three.   December 26, 1973.]

MARY E. HOWELL, *Respondent*, v. MARK KRAFT *et al.*,
*Appellants*.

*William D. Symmes* (of *Witherspoon, Kelley, Davenport & Toole*), for appellants.

*Douglas D. Lambarth* of *Spokane County Legal Services,* for respondent.

McINTURFF, J.—Defendants appeal from a judgment rescinding a note, mortgage and quitclaim deed executed by plaintiff in favor of defendants, cancelling a debt of $280 allegedly owed defendants by plaintiff, representing advancements to plaintiff from defendants made to cure deficiencies in a real estate contract; and awarding damages in the amount of $8,783.58 to plaintiff. Included in the damage award were $4,854.28 representing the principal balance of the contract reinstated by the court; $475 representing actual damages; $1,000 treble damages under RCW 19.86, the Consumer Protection Act; $132 as fire insurance premium paid by plaintiff; $87 as taxes paid by plaintiff; $500 as attorney's fees awarded; and $72.50 as costs awarded.

In September of 1955 plaintiff and her then living husband purchased a house by contract from the estate of D. J. Howell. Plaintiff and her husband sold the property to Raymond Converse and his wife for $5,950 on June 28, 1967. Converses assumed the obligation of plaintiff and her husband under the original contract and executed a second contract to plaintiff and her husband for their equity in the property. Defendant realty acted as plaintiff's real estate broker in this transaction and received a $500 promissory note for its real estate commission on the sale. Converses sold the property to Cecil Fulton and his wife under a third contract for $6,950 on April 7, 1969; Fulton assumed Converses' obligation under the Howell-Converse contract. Defendant realty also served as Converses' real estate broker in this sale and received a promissory note from Converse in the amount of $700 for its real estate commission in the sale. On April 7, 1969, the Converses assigned their vendors' interest in the Converse-Fulton contract to Mark Kraft and Rosemary Kraft, defendants.

Payments were not made by the Fultons under the con-

tract, resulting in deficiencies in the Converse-Fulton contract for the payments due in the months of July, August, September, October, November, December 1969, and January of 1970. The failure of Fultons to make payments on the Converse-Fulton contract resulted in deficiencies in the previous contracts, Howell estate to Howell, and Howell to Converse. January 21, 1970, a notice of forfeiture was served by the estate of D. J. Howell upon plaintiff for deficiencies for payment under the contracts for the months above enumerated. Defendants served a notice of forfeiture as the assignee of the Converse vendor's interest in the Converse to Fulton contract on Mr. and Mrs. Fulton on January 23, 1970.

Upon receipt of the notice of forfeiture, plaintiff contacted defendants and expressed her concern that the property would be lost through forfeiture for $280, and indicated that she did not have that amount of money. Defendants made payment of the $280, curing the deficiency in the Howell estate-Howell contract, and characterized the same as "an advancement." In February 1960, plaintiff executed a quitclaim deed to the property to defendants in consideration of the loan of $280. Plaintiff then moved into the house as the property needed certain work to be done before it would be in a salable condition. Later, plaintiff said she would like to stay in the house and contacted defendants, indicating that she did not wish to have the house sold. Defendant Mark Kraft represented to plaintiff that it would be necessary for her to sign certain releases if she wished the property not to be sold. Plaintiff then executed what she thought to be releases at the home of defendants' daughter, and it was not until later that she discovered that she had signed a promissory note and mortgage in the amount of $2,200 in favor of defendants.

Subsequently defendant Mark Kraft wrote plaintiff two letters, the first of which indicated she was 4 months in arrears in her payments, and the second, which stated: "Now if you prefer to vacate the property I will gladly

make payments on your former contract and sell the property to a new purchaser."

The trial court held that the actions of defendants constituted common-law fraud and granted the relief above outlined.

Defendants argue the trial court committed reversible error in the following instances: (1) by holding that the assignee of vendor's interest in a real estate contract assumes the obligation to make payments on that contract in the event of the vendee's default; (2) by concluding that defendants had committed common-law fraud when the court's findings of fact are insufficient to support such conclusion of law or judgment based thereon; (3) by applying the preponderance of evidence test to its determination of common-law fraud rather than applying the test of clear, cogent and convincing evidence; and (4) by holding that RCW 19.86, the Consumer Protection Act, applies to transactions for the sale of real estate by licensed real estate brokers.

The trial court in its oral opinion, which by incorporation became its findings of fact and conclusions of law, in pertinent part, stated:

> But, at that time Mr. Kraft is the one who had the obligation to pay under the Howell-Converse contract to Mrs. Howell $55.00 a month which he had not paid. He was in default as to her and her rights in the contract. He had previously represented her as an agent not only as a broker for the sale of the house originally to Converses but subsequently on the sale to Converses of her contract right for the house itself, and he stood as the successor in interest to the Converses under that contract. *He had an affirmative duty to advise her that he was in default, that he owed her $55.00 a month, and as a matter of fact, there wasn't any question of advancing money to her at all in the amount of $280.00* to make the rectification of the contract to D. J. Howell because that money was included within the money which he should have paid *and had an obligation to pay* had he wished to be paid his interest under the assignment of the Converse contract.

As a consequence, under the circumstances in which the parties have dealt with each other over the past, the relative positions with respect to their understanding of the real estate market and the transactions in this matter, and Mr. Kraft's failure to disclose his interest, obligations and duties to Mrs. Howell under those circumstances as the successor of interest to her subvendee, Mr. Kraft deceived Mrs. Howell, and in fact made representations which to my mind fill all the necessary elements of common law fraud.

(Italics ours.)

■ Apparent from the trial court's statement is that the court's finding of common-law fraud is premised upon a duty by which defendants had to make payments under the Converse-Fulton contract by way of the assignment of vendor's interest by Converse to defendants. It is settled in this jurisdiction that the assignee of a vendor's interest in a real estate contract assumes no obligation on any underlying contract, unless by the terms of the instrument he expressly agrees to assume such obligation. The rule is succinctly stated in *Higgenbotham v. Topel,* 9 Wn. App. 254, 259, 511 P.2d 1365 (1973), where the court stated:

> Ordinarily, the assignee of an executory contract is not liable on the contract in the absence of an express assumption of the obligations contained therein. *Bimrose v. Matthews,* 78 Wash. 32, 38, 138 P. 319 (1914); *Hardinger v. Fullerton,* 165 Wash. 483, 5 P.2d 987 (1931); *Townsend v. Rosenbaum,* 187 Wash. 372, 396, 60 P.2d 251 (1936).

Further, the burden of proof rests upon the party asserting the obligations by the assignee. In the instant action there exists no evidence, direct or inferential, which supports the position that defendants assumed obligations under the Converse-Fulton contract through the assignment. The trial court erred in holding the defendants had a duty to make such payments under the contract, and in premising the finding of common-law fraud upon the existence of such a duty.

■ Defendants next argue the court erred in that its findings of fact are insufficient to support its conclusions of

law with regard to fraud and its judgment thereon. We agree. The trial court must make findings of fact as to each of the nine elements of common-law fraud. *Hall v. American Friends Serv. Comm., Inc.*, 74 Wn.2d 467, 445 P.2d 616 (1968); *Bowman v. Webster*, 42 Wn.2d 129, 253 P.2d 934 (1953). It is error not to make findings of fact on all material issues. *Hall v. American Friends Serv. Comm., Inc., supra*. Each of the nine elements of common-law fraud is a material issue to be resolved. *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 457 P.2d 603 (1969); *Williams v. Joslin*, 65 Wn.2d 696, 399 P.2d 308 (1965). In *Beckendorf*, at page 462, the court stated:

> The elements necessary to establish fraud—all of which must be shown by clear, cogent, and convincing evidence—are a representation of an existing fact; its materiality; its falsity; the speaker's knowledge of its falsity; his intent that it shall be acted upon by the person to whom it is made; ignorance of its falsity on the part of the person to whom it is addressed; the later's [sic] reliance on the truth of the representation; his right to rely upon it; and his consequent damage. *Williams v. Joslin*, 65 Wn.2d 696, 399 P.2d 308 (1965); *Michielli v. United States Mortgage Co.*, 58 Wn.2d 221, 361 P.2d 758 (1961); *Chiles v. Kail*, 34 Wn.2d 600, 208 P.2d 1198 (1949).

We are unable to discern, from the court's oral opinion, the findings of fact as to each of the nine elements of common-law fraud, consequently the findings of fact are insufficient to support the judgment based upon common-law fraud.

Defendants further urge that the trial court committed reversible error by applying the preponderance of the evidence test to its determination of common-law fraud, rather than applying the test of clear, cogent and convincing evidence. The trial court in its oral decision incorporated as the court's findings of fact, the following:

> Mr. Kraft's failure to disclose his interest, obligations and duties to Mrs. Howell under those circumstances as the successor of interest to her subvendee, Mr. Kraft deceived Mrs. Howell, and in fact made representations

which to my mind fill all the necessary elements of common law fraud.

The subsequent transaction with respect to the execution of the note and mortgage carried forward from that point involved a further deception, which the court finds by a preponderance of the evidence from the facts and circumstances surrounding the execution of that note and mortgage.

From the above it is apparent there exists at least an ambiguity as to whether the trial court applied the proper test of clear, cogent and convincing evidence to its findings in regard to the elements of common-law fraud, if not an inference that the trial court utilized the improper preponderance of the evidence test.

Defendants argue the trial court erred in holding RCW 19.86, the Consumer Protection Act, applicable in the present case. We agree for the reasons noted in *Dick v. Attorney General*,[1] 9 Wn. App. 586, 513 P.2d 568 (1973), and *Williamson v. Grant County Pub. Hosp. Dist. 1*, 65 Wn.2d 245, 396 P.2d 879 (1964).

The judgment of the trial court is reversed and the case is remanded for entry of specific findings of fact and conclusions of law consistent with this opinion and, at the discretion of the trial court, the taking of further evidence incidental thereto.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied February 19, 1974.

Review granted by Supreme Court April 29, 1974.

---

[1] *Dick v. Attorney General*, 9 Wn. App. 586, 513 P.2d 568 (1973), petition for review by Supreme Court granted November 20, 1973.