MAGNA WELD SALES CO., INC., a Washington Corporation, Plaintiff-Appellee,

v.

MAGNA ALLOYS AND RESEARCH PTY. LIMITED, an Australian Corporation, Defendant-Appellant.

No. 75-1344.

United States Court of Appeals, Ninth Circuit.

Nov. 11, 1976.

Rehearing and Rehearing In Banc Denied Jan. 10, 1977.

Francis A. Utecht (argued), Long Beach, Cal., for defendant-appellant.

John D. Blankinship (argued), Seattle, Wash., for plaintiff-appellee.

Before MOORE * and DUNIWAY, Circuit Judges, and TAYLOR,** District Judge.

DUNIWAY, Circuit Judge:

Magna Alloys and Research Pty. Limited, an Australian corporation [Magna], appeals from a judgment against it in an action charging that it fraudulently persuaded H. F. Soderling and his sons, Karle and Charles, to enter an agreement to set up a distributorship for Magna's welding materials. Three grounds of appeal are argued: (1) that the trial court's findings of fact are clearly erroneous, (2) that the trial court failed to find three essential elements of fraud, and (3) that the computation of damages is in error. We affirm the finding of liability, but reverse and remand the award of damages for reconsideration.

Stated most favorably to the Soderlings, the facts are these: H. F. Soderling, the principal investor in the distributorship, was first introduced to Magna's welding products when he witnessed a demonstration of them in San Francisco in September

---

* The Honorable Leonard P. Moore, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

** The Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation.

of 1969. Having been in the industrial supply business for over 25 years, but knowing nothing about welding supplies, Soderling thought that branching out into distributing Magna's welding products would be a good investment. He met with Magna's representatives the day after the demonstration, and they explained their products and organization and arranged to set up a meeting and demonstration in Seattle.

Upon returning to Seattle, Soderling talked with his two sons, discussing the possibility of establishing a Magna distributorship in the Pacific Northwest. On October 20, a Magna official met with the Soderlings in Seattle and went through the entire Magna presentation with them. Among the things that he told the Soderlings to persuade them to enter into a distributorship agreement, all of which the trial court found to be false, were: (1) that Magna's welding rods were developed by the company president, Don Richardson, who was a physicist, a metallurgist, and a scientific genius, (2) that Magna had developed its rods in its own laboratories and produced them in Australia, (3) that the rods were "superproducts" with qualities far superior to any other, and that, as a result, there was no effective competition, (4) that the Magna rods could be sold at much higher prices than any other rod, (5) that the Soderlings would not need any experience or technical training in welding to be successful (i. e., "the rods will sell themselves"), and (6) that in Washington and Oregon, six full-time salesmen would each produce $1,000 worth of orders every week once the business was established.

As part of the demonstration, the Magna representative and the two Soderling sons went to a Seattle welding shop where a demonstration was conducted and an attempted sale was discussed with the head welder at the shop. He did not buy, but the Soderlings testified that the product seemed to work fine. Upon returning to the elder Soderling's office, there were further discussions, and that same evening, without making any investigation into the accuracy of Magna's representations, the Soderlings obtained exclusive rights to sell Magna products in Oregon and Washington and placed an order for Magna products. The distributorship was to be incorporated, as it was under the name Magna Weld Sales Co., Inc. [Magna Sales]. The agreement provided that either party could terminate it for cause upon notice or without cause upon 90 days' notice.

Magna Sales began selling in December of 1969, and within a few weeks it was apparent that there were problems. Buyers were unhappy because the Magna rods were performing no better than other rods which cost much less. Thus repeat orders were infrequent. By January of 1970, just over three months after they signed the contract, the Soderlings began to discover that the product was not as represented and that the market was much more competitive than they had been told. H. L. Soderling admitted at trial, and the court found, that by March 15, 1970, he knew that he had been misled. Nonetheless, Soderling continued to purchase Magna products for inventory, did not complain to Magna that its products and the market were not as claimed, and did not terminate the agreement.

At trial, evidence was produced which showed that Magna's representations were false. Richardson was not a welding expert or a scientific genius and had not developed Magna's rods. Magna had not developed its rods in its own research laboratories; it had no laboratories. It did not produce its rods in Australia; it purchased them from other producers in Australia, New Zealand, Canada, West Germany, and the United States, shipped them to Sydney for repackaging under the Magna label, and then exported them to its distributors. The rods were no better than other rods. The trial court found that Magna had induced the Soderlings to enter into the distributorship agreement by fraud and awarded damages in the amount of $50,400, the profits that the distributorship would have earned, if Magna's representations had been true, from the time the contract was signed until the spring of 1972, when Magna finally termi-

nated the agreement. The lost profits were calculated by using the figures which Magna had presented to the Soderlings as the sales and profit figures which they could expect.

■ Magna argues first that many of the factual findings of the trial court are clearly erroneous. We might agree with Magna that there is evidence upon which contrary findings could have been based, but that is not the standard which we apply. We do not set aside the trial court's factual findings because we might have found differently. *United States v. Yellow Cab Co.*, 1949, 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150. We cannot say that the findings of the trial judge are clearly erroneous.

■ Magna's second argument is more troublesome. Under the substantive law of Washington, which we must apply in this case (*see Erie R. Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188), there are nine elements of the tort of misrepresentation. *Salter v. Heiser*, 1950, 36 Wash.2d 536, 219 P.2d 574, 581. It is error for the trial court to fail to make a finding on each of the nine elements. *Howell v. Kraft*, 1974, 10 Wash.App. 266, 517 P.2d 203, 206. Magna correctly points out that, while the trial court explicitly found six of the nine elements, it failed to find expressly that (1) the Soderlings were ignorant of the falsity of the representations, (2) the Soderlings relied on the truth of the representations, and (3) the Soderlings had a right to rely on the representations. The failure to make these findings, Magna argues, requires reversal.

■ Washington substantive law requires that all nine elements of the tort must be proved. But the form and manner in which the court must record its findings are governed by F.R.Civ.P. Rule 52(a). The rule is procedural and is governed by federal law. *See Hanna v. Plumer*, 1965, 380 U.S. 460, 470–71, 85 S.Ct. 1136, 14 L.Ed.2d 8. It is not always necessary to remand a case for further findings when the trial court fails to state its findings explicitly. *See Riess v. Murchison*, 9 Cir., 1967, 384 F.2d 727, 736; *Yanish v. Barber*, 9 Cir., 1956, 232 F.2d 939, 947. "The failure of the trial court to comply with Rule 52 . . . does not demand reversal 'if a full understanding of the question presented may be had without the aid of separate findings.' " 5A *Moore's Federal Practice*, 2718–21, ¶ 52.-06[2] (1975). Therefore, we will affirm if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision (*Carr v. Yokohama Specie Bank, Ltd.*, 9 Cir., 1952, 200 F.2d 251, 255), if the findings are sufficient to understand the basis for the decision (*Seligson v. Roth*, 9 Cir., 1968, 402 F.2d 883, 887), or if there can be no genuine dispute about the omitted findings (*Yanish v. Barber, supra*, 232 F.2d at 947).

■ Here, the nine elements of fraud as it is defined in Washington law were brought to the attention of the trial judge. Thus he knew that he must find each element if he were to give judgment for the Soderlings. We have no trouble in concluding that, while not saying so in so many words, the trial court did find that the Soderlings were ignorant of the falsity of Magna's representations and that they relied on the truth of those representations. The court found that the Soderlings were "induced by defendant to take over the distributorship . . . by means of fraudulent representations." It necessarily follows that the Soderlings were ignorant of their falsity and relied on their truth. How else could it be fairly found that they were induced?

■ There is, however, nothing in the court's findings from which we can so readily imply a finding that the Soderlings had a right to rely on Magna's misrepresentations. Nonetheless, we do not conclude that this requires reversal. It is undisputed that the Soderlings had no knowledge of welding or of the welding supplies market. In such a case there is no duty to investigate in the state of Washington. *Boonstra v. Stevens-Norton, Inc.*, 1964, 64 Wash.2d 621, 393 P.2d 287, 290. Because the court found that Magna misrepresented material facts in an attempt to induce the Soderlings and

that the Soderlings were in fact induced, there can be no genuine dispute under Washington law about the Soderlings' right to rely, *Boonstra, supra; Cunningham v. Studio Theatre, Inc.*, 1951, 38 Wash.2d 417, 229 P.2d 890, 892–93. To paraphrase the Supreme Court of California,[1] an ignorant or gullible man is as much entitled to protection against fraud as an informed or skeptical one, and much more in need of it. Thus the court's failure to state specifically that the Soderlings had a right to rely on Magna's misrepresentations is not reversible error.

However, we find the trial court's method of fixing damages to be in error and reverse and remand the damage issue for redetermination. The court based its finding of damages on the sales and cost projections that Magna used in inducing the Soderlings to become its distributor, and on that basis determined the profits that they would have had during the two and one-half years in which they acted as Magna's distributor if Magna's lies had been true. This was error.

First, damages for lost profits must be for profits actually lost, and these must be proven with reasonable certainty. *National School Studios, Inc. v. Superior School Photo Service, Inc.*, 1952, 40 Wash.2d 263, 242 P.2d 756. Magna's false predictions cannot be used to measure the actual losses, if any, suffered by the Soderlings. Failure to obtain anticipated "pie in the sky" is not a financial loss, however disappointing it may be.

Second, even if such representations could be used to measure damages in some cases, Washington forbids awarding lost profits as damages for misrepresentation when the business is a new one with no established financial track record. *O'Brien v. Larson*, 1974, 11 Wash.App. 52, 521 P.2d 228, 230. Magna Sales was such a business.

Third, to award the Soderlings lost profits for the entire time that they remained in business was error when, by H.

L. Soderling's own admission, he became aware that Magna had misrepresented its products to him by March 15, 1970, less than half a year after the agreement was made. The agreement allowed him to terminate upon notice for cause, yet he continued to purchase Magna products for inventory. Once the Soderlings became aware of the falsity of representations, they were no longer entitled to rely on them, and they cannot recover losses incurred as a result of their choosing to remain in the business. In fact, it was Magna that finally terminated the agreement two years later, and surely, had it not done so, the Soderlings could not have continued to claim "lost profits" indefinitely.

The judgment of liability is affirmed, but the award of damages is reversed and the case is remanded for recomputation of the amount of actual loss suffered by the Soderlings before the time when they discovered falsity of representations.

---

1. "A drunken man is as much entitled to a safe street, as a sober one, and much more in need of it." *Robinson v. Pioche, Bayerque & Co.*, 1855, 5 Cal. 460, 461.