**FEDERAL TRADE COMMISSION,
Plaintiff–Appellee,**

v.

**ENFORMA NATURAL PRODUCTS,
INC.; Andrew Grey, Defendants–
Appellants,**

**Twenty–Four Seven, LLC; Donna
Diferdinando, Respondents–
Appellants.**

**Federal Trade Commission,
Plaintiff–Appellee,**

v.

**Enforma Natural Products, Inc.;
Andrew Grey, Defendants–
Appellants,**

**Michael Ehrman, Respondent–
Appellant,**

and

**Fred Zinos, Defendant.**

**Nos. 02–56842, 02–57078.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2003.

Filed April 1, 2004.

As Amended April 8, 2004.

John L. Quinn and Eric L. Dobberteen, Arnold & Porter, for the appellants.

Lawrence DeMille–Wagman, Federal Trade Commission, for the appellee.

Before BEEZER, FISHER, Circuit Judges, and ENGLAND, JR., District Judge.**

** The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

BEEZER, Circuit Judge:

We consolidate these appeals for purposes of review and this opinion. Enforma Natural Products, Inc. ("Enforma") asks us to quash two separate preliminary injunctions issued by District Judge J. Spencer Letts (before this case was reassigned to District Judge Stephen V. Wilson) restricting the sale and marketing of Enforma's diet supplement products. Both appeals focus on irregular procedures employed by the district court. In appeal No. 02–56842, Enforma argues that the district court improperly relied on a court-appointed expert and issued insufficient findings of fact and conclusions of law to support the first preliminary injunction against Enforma. In appeal No. 02–57078, Enforma contends that the district court's unilateral substantive amendment of the parties' stipulated proposed preliminary injunction was an abuse of discretion, particularly where the district court added an erroneous contempt finding. Enforma also argues that the findings and conclusions issued in support of the second injunction are insufficient and that the court's reliance on the court-appointed expert was improper.

We vacate both injunctions and remand both appeals. In appeal No. 02–56842, we remand for proper findings of fact supported by a record made in open court and we instruct the district court to clarify the status and role of the court-appointed expert in accord with this opinion. In appeal No. 02–57078 we instruct the district court to review the parties' stipulated proposed preliminary injunction, to identify the court's objections, and to provide the parties an opportunity to respond to the court's concerns. Alternatively, the district court may, upon notice, enter a different form of preliminary injunction supported by findings of fact and conclusions of law on the record.

## I Background and Procedural History for Both Appeals[1]

Enforma markets and sells diet supplement products. In April 2000, the Federal Trade Commission ("FTC") brought an action against Enforma and Andrew Grey, Enforma's President and Chief Executive Officer (collectively "Enforma") in the United States District Court for the Central District of California alleging that Enforma violated the Federal Trade Commission Act ("Act") by making false and unsubstantiated claims for products distributed under the trade names: Fat Trapper, Fat Trapper Plus and Exercise in a Bottle. In broad outline, the FTC's complaint challenged Enforma's claims that its products (1) enable consumers to lose weight and maintain weight loss without the need to reduce the intake of calories or to engage in physical exercise; (2) prevent the absorption of fat in the human body; (3) increase metabolism at the cellular level, leading to lower levels of fat in the human body; and (4) enable consumers to lose weight even if they eat high-fat foods.

The parties resolved the complaint in May 2000 through entry of a Stipulated Final Order. As part of the Stipulated Final Order, Enforma admitted no liability, but agreed to pay the FTC $10 million. Enforma also agreed not to sell or market any product making the above or similar claims unless it possessed and relied upon "competent and reliable scientific evidence that substantiates" any such representation at the time the claim was made.[2]

---

1. Because the factual and procedural histories of both appeals are intertwined, we address them together.

2. The Stipulated Final Order defines "competent and reliable scientific evidence" as "tests, analyses, research, studies or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally

In January 2002, the FTC applied for an Order to Show Cause why Enforma and Michael Ehrman, an Enforma officer, should not be held in civil contempt for violating the May 2000 Order ("the first contempt action"). The FTC alleged that Enforma continued to use misleading advertising for its products despite a lack of adequate substantiation for its claims.[3]

The district court held a status conference on the first contempt action in March 2002. At the conference, the district court indicated that its preliminary review of the evidence failed to support Enforma's weight loss claims, but did appear to support its claims concerning the fat-binding ability of chitosan, the active ingredient in Fat Trapper Plus. Enforma expressed a desire to present expert witness testimony. The district court indicated that it intended to appoint a third-party expert to aid the court. The district court stated that the court-appointed expert would review the work of both parties' experts, advise the court regarding how much discovery was needed, advise the court as to the proper methodology for examining the claims, and determine which of the parties' experts had presented the stronger scientific views. The court explained that before the experts' opinions were refined by counsel and before the parties deposed one another's experts, the court wanted the parties' experts to meet informally with the court-appointed expert to discuss the science and to narrow the range of the dispute. The parties agreed to have their experts propose and select a mutually agreeable candidate to serve as the court-appointed expert. The court also ordered the parties to submit in writing the issues that the court-appointed expert should examine.

On March 28, 2002, Dr. Heber, who was selected by the parties, was appointed by the court to serve as the court's expert. The order appointing Dr. Heber states that the expert is appointed "to evaluate matters related to the science at issue, and to advise the Court with respect to his opinions related to the science." The FTC and Enforma lodged significantly different proposed orders specifying scientific issues for consideration and evaluation by Dr. Heber. The record discloses that the district court did not enter either proposed order. There is no record before us identifying what matters, if any, the district court submitted to Dr. Heber.

On July 23, 2002, while the first contempt action was still under consideration, the FTC filed a second application for an Order to Show Cause why Enforma should not be held in civil contempt for violating the May 2000 Stipulated Final Order ("the second contempt action"). The defendants in the second contempt action are Enforma Natural Products, Inc., Twenty–Four Seven, LLC, an Enforma subsidiary, and Donna DiFerdinando, Vice–President of Marketing and Development for Enforma and Vice President of Research and Development for Twenty–Four Seven, LLC (collectively also "Enforma"). The FTC alleged that Enforma was marketing Acceleron and Chitozyme, two products that made the same general claims associated with Exercise in a Bottle and Fat Trapper Plus, respectively. In its supporting memorandum, the FTC requested the initiation of contempt proceedings and a temporary restraining order ("TRO") to prevent Enforma from making and disseminating allegedly unsubstantiated claims regarding its products through marketing and packaging.

accepted in the profession to yield accurate and reliable results."

**3.** In the first contempt action, the FTC did not challenge Enforma's general weight loss claims, but only the scientific claims that the active ingredient in the Fat Trapper products "traps" fat and the active ingredient in Exercise in a Bottle stimulates the metabolism.

On July 25, 2002, the district court denied the TRO request associated with this second contempt proceeding, but scheduled a preliminary injunction hearing for September 16, 2002. The parties completed briefing on the injunction issue related to the second contempt action by September 20, 2002. The hearing was continued to September 30, 2002 and then to October 8, 2002.

On September 30, 2002, the court conducted an on-the-record status conference with regard to the second preliminary injunction request. During the conference, the district court stated that the merits of the contempt issues would involve a bench trial. Nothing was resolved during this status conference.

Following the September 30, 2002 status conference, the district court scheduled an October 30, 2002 meeting, which the court initially called a hearing. The court's calendar designated the meeting as a status conference. It is unclear what, exactly, occurred at the October 30, 2002 proceeding, which took place off the record. It is also not clear whether the proceeding was directed at both contempt actions or only the second action, but it appears that the proceeding involved discussion of issues common to both actions. According to the parties, the meeting began as an informal conference between the district court judge, counsel, the experts of both parties, and the court-appointed expert, Dr. Heber. Dr. Heber and the parties' experts discussed the scientific issues involved in the case. Dr. Heber was not under oath during the meeting, nor was he cross-examined by the parties.[4] The parties report that at one point, the district court judge left the meeting and then returned. It appears that there were also *ex parte* communications between the district court and Dr. Heber. The district court later indicated that Dr. Heber opined during the October 30, 2002 conference that Enforma's sources provided inadequate substantiation of its claims. Enforma, on the other hand, claims that when the district court judge was not present, Dr. Heber actually "confirmed that Fat Trapper Plus does, in fact, trap fat."

At the end of the conference, the district court indicated that it would grant the FTC's preliminary injunction request related to the second contempt action. Later that day, the district court signed the FTC's proposed injunction order, adopting verbatim the FTC's proposed findings of fact and conclusions of law. The FTC's proposed findings were conclusory and provided no details concerning Enforma's alleged contumacy.

The next day, Enforma appealed the preliminary injunction, contending that the district court made inadequate findings of fact and improperly relied on the opinion of Dr. Heber. This first preliminary injunction (relating to the second contempt action) is the subject of the first appeal, number 02–56842.

On November 4, 2002, just after Enforma appealed the preliminary injunction, the district court held a telephonic status conference.[5] During the conference, the district court made additional oral findings in support of the preliminary injunction that had just been appealed.

---

4. The district court indicated in an April 1, 2003 phone conference that the parties declined the court's offer to depose or cross-examine Dr. Heber at the October 30, 2002 meeting. Enforma argues that it never had a real opportunity to question, cross-examine, or depose Dr. Heber.

5. It is not clear whether the status conference was initially scheduled to address the second contempt action, the first contempt action, or both.

Also on November 4, 2002, the FTC, having successfully procured a preliminary injunction in the second contempt action, lodged a proposed injunction addressing the allegations and defendants involved in the *first* contempt action. The FTC did not file a brief. The next day, Enforma filed an opposition to the proposed injunction, and the FTC filed its reply a week later.

On December 6, 2002, before the district court acted on the FTC's new preliminary injunction request relating to the first contempt action, the FTC and Enforma stipulated to entry of a proposed form of preliminary injunction. The proposed terms of the parties' stipulated preliminary injunction were almost identical to those found in the October 30, 2002 injunction related to the second contempt action. The parties also stipulated to a continuation of the merits hearing in the second contempt action to January 2003.

The district court considered both stipulations and agreed to the continuance. The court also entered the form of the proposed injunction to which the parties agreed, but only after making two significant changes to its terms.[6] The district court struck language that would have allowed Enforma to repackage, rather than recall, its Fat Trapper, Fat Trapper Plus, and Exercise in a Bottle products. The district court also added language stating that it found the defendants in contempt during the course of the October 30, 2002 informal hearing. Enforma appealed this preliminary injunction as well, challenging,

among other things, the district court's unilateral amendment of the parties' proposed form of injunction. This second preliminary injunction (relating to the first contempt action) is the subject of Appeal No. 02–57078.[7]

## II Legal Standards

■ Preliminary injunctive relief is available to a party that demonstrates either 1) a combination of probable success on the merits and the possibility of irreparable harm, or 2) that serious questions are raised and the balance of hardship tips in its favor. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir.2000) (quoting *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937(9th Cir.1987)).

■ In a civil contempt action, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir.1999) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir.1992)).

■ We review de novo the legal premises underlying a preliminary injunction. *Does 1–5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir.1996). Otherwise, we review for abuse of discretion the district court's grant of a preliminary injunction. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204(9th Cir.2000). We will reverse

---

6. The district court made an additional change to the proposed injunction, but it is immaterial for purposes of this appeal.

7. After the appeals were filed, the district court learned of Enforma's appellate arguments addressing the role of the court-appointed expert. At an April 1, 2003 meeting with the parties, the district court expressed

his displeasure and indicated a hope that this circuit would remand to allow him to make further findings. The district court also indicated that it wanted to schedule a meeting to recreate a record of the October 30, 2002 meeting. Following that April discussion, Enforma successfully moved to disqualify Judge Letts. The case was then transferred to Judge Wilson.

a preliminary injunction when a district court based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Id.* We may also remand for further findings of fact and conclusions of law where a district court's findings and conclusions supporting the preliminary injunction are not sufficient to permit meaningful review. *Lumbermen's Underwriting Alliance v. Can–Car, Inc.,* 645 F.2d 17, 18–19 (9th Cir.1980). A district court must set forth findings of fact and conclusions of law supporting an order granting an injunction. Fed.R.Civ.P. 52(a).[8] Oral or written findings are permitted. *Id.* A failure to comply with Rule 52(a) does not require reversal unless a full understanding of the question is not possible without the aid of separate findings. *Davis v. City and County of San Francisco,* 890 F.2d 1438, 1451 (9th Cir.1989). We may affirm if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for decision or if there can be no genuine dispute about the omitted findings. *Id.* at 1451; *Magna Weld Sales Co. v. Magna Alloys & Research Pty. Ltd.,* 545 F.2d 668, 671 (9th Cir.1976). If these standards are not met, we may remand the case for additional and more detailed findings and conclusions. *Lumbermen's,* 645 F.2d at 18–19. We review issues relating to the district court's management of trial for abuse of discretion. *General Signal Corp. v. MCI Telecom. Corp.,* 66 F.3d 1500, 1507 (9th Cir.1995).

## III Appeal No. 02–56842

█ This appeal is Enforma's challenge to the first preliminary injunction, related to the second contempt action involving the products Acceleron and Chitozyme. Just after the unrecorded October 30, 2002 proceeding, the district court adopted verbatim the FTC's proposed form of the injunction, including the findings of fact and conclusions of law. Enforma's briefing focuses solely on the sufficiency of the district court's findings and conclusions and the participation of the court-appointed expert, Dr. Heber. Because there is evidence in the record to suggest that the district court may have improperly relied on Dr. Heber's opinion, we vacate the preliminary injunction and remand for further factual development and clarification of the factual and expert contributions of Dr. Heber. We agree with Enforma that the district court's factual findings, adopted verbatim from the FTC's proposed order, are insufficient in the circumstances in this case and we remand for further factual development.

### A. Role of the court-appointed expert

Enforma argues that the district court erroneously deprived the appellants of the ability to depose or cross-examine the court-appointed expert, Dr. Heber, or to view a report prepared by Dr. Heber, as required by Federal Rule of Evidence 706.[9] The FTC argues, however, that Dr. Heber was only a "technical advisor" and

**8.** Fed.R.Civ.P. 52(a) provides, in relevant part:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, ... and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of

fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.... It will be sufficient if findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court.

**9.** Fed.R.Evid. 706 provides, in pertinent part:

thus not subject to Rule 706's requirements. The record is not conclusive on this issue. Enforma claims that Dr. Heber presented his opinions to the parties during the October 30, 2002 conference, and that the district court relied on those opinions in deciding to issue the preliminary injunction. The FTC contends that the October 30, 2002 meeting was not the basis for entry of the preliminary injunction and that Dr. Heber was not an independent source of evidence. Our review is hampered by the lack of any record detailing the proceedings of October 30, 2002, which resulted in a grant of the petition for a preliminary injunction.

 When outside technical expertise can be helpful to a district court, the court may appoint a technical advisor. *Ass'n of Mexican–American Educators v. California* ("*AMAE*"), 231 F.3d 572, 590 (9th Cir.2000) (en banc). The role of a technical advisor is to organize, advise on, and help the court understand relevant scientific evidence. *Id.* A technical advisor is a tutor who aids the court in understanding the "jargon and theory" relevant to the technical aspects of the evidence. *Reilly v. United States*, 863 F.2d 149, 158 (1st Cir.1988). A technical advisor may not assume the role of an expert witness by supplying new evidence; nor may an advisor usurp the role of the judge by making findings of fact or conclusions of law. *See A & M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1097 (9th Cir.2002); *Reilly*, 863 F.2d at 155. Technical advisors, acting as such, are not subject to the provisions of Rule 706, which govern court-appointed expert *witnesses*. A court-appointed expert is a witness subject to Rule

706 if the expert is called to testify or if the court relies on the expert as an independent source of evidence. *AMAE*, 231 F.3d at 591; *Reilly*, 863 F.2d at 156–57.

Dr. Heber was not a testifying expert witness in a formal sense. He was never placed under oath or called to testify at trial. He did not submit an expert report or any other independent evidence on the record. According to Enforma, however, Dr. Heber offered his own opinion on the scientific evidence in the record during the October 30, 2002 conference. Without a record of the October 30 proceeding and any possible *ex parte* communication between Dr. Heber and the district court, it is impossible to determine whether Dr. Heber became the source of independent evidence or whether he merely advised the court with regard to the scientific issues in the case.

Even if we assume that Dr. Heber was a technical advisor who did not provide independent evidence, we are concerned about the manner in which the district court utilized Dr. Heber's expertise. Despite our general endorsement of technical advisors, there is concern that the use of technical advisors may impermissibly influence a district court's ultimate findings or impinge upon the court's role as finder of fact. In *AMAE*, we explained that in "the absence of any evidence even suggesting an impropriety on the part of the district court," we do not conclude that the court abused its discretion and we "assume that the district court did its job properly." 231 F.3d at 591. Unlike the situation in *AMAE*, however, this record contains evidence that leads us to question whether the district court "did its job properly."

The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. ... A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

The district court indicated that it was unlikely to disagree with Dr. Heber's views. Before Dr. Heber was appointed, the district court explained to the parties that the role of Dr. Heber, the "court-appointed expert," would be to confer with the parties' experts in an informal off-the-record discussion and to "tell [the court] who's right." The district court stated that the court would ultimately decide which party's expert he believed, but admitted that he was unlikely to disagree with the court-appointed expert.[10] After those views were apparently expressed at an informal proceeding, the district court immediately issued a preliminary injunction. The district court later stated on the record that the preliminary injunction reflected the court's independent views. The record also indicates, however, that the district court initially believed that Enforma's evidence substantiated Enforma's fat-trapping claims, though not its weight-loss claims. The little evidence that is available in the record suggests that the district court may have improperly relied on independent findings and conclusions of Dr. Heber.

Enforma claims that Dr. Heber carried a stack of materials with him when he attended the October 30, 2002 proceeding. Enforma also asserts that the parties did not have an opportunity to view the materials that Dr. Heber reviewed or to question Dr. Heber about the studies and reports on which he relied. If Dr. Heber was merely a technical advisor, he should not have relied upon extra-record information (beyond, perhaps, his own work on the subject). If Dr. Heber offered independent evidence as an expert witness, he should have been subject to cross-examination about the information he relied upon in forming his opinions. See Fed.R.Evid. 706.

The district court's failure to make a record of Dr. Heber's conclusions exacerbates our concern that Dr. Heber may have played an improper role in the district court's decision. In AMAE we accepted a "paucity of information in the record about the [technical expert's] interaction with the district court" where the district court "made all required findings of fact." 231 F.3d at 591 & n. 13. Here, the district court's failure to make adequate findings of fact joins other signs that undermine our confidence that the district court acted independently. The district court could have alleviated these concerns by detailing the expert's role at the time of appointment and providing a more detailed description of Dr. Heber's actual role. The district court's decision not to adopt any safeguards provides little reason for comfort.

In a dissenting opinion in AMAE, Judge Tashima proposes several procedural safeguards for district courts to follow when appointing technical experts. 231 F.3d at 611–14 (Tashima, J., dissenting). The AMAE majority did not adopt Judge Tashima's guidelines in AMAE, refusing to "fault the court for failing to foresee his recommendations." Id. at 591. Though we do not require strict adherence to any specific procedures regarding technical advisors, we take this opportunity to join a number of courts that have endorsed Judge Tashima's recommendations. See, e.g., TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1378–79 (Fed.Cir.2002) (predicting that the Ninth Circuit would elect to adopt in subsequent cases safeguards governing the appointment of technical advisors that are similar to those proposed by Judge Tashima in AMAE); Conservation

---

**10.** The district court judge indicated that "If the court-appointed expert agrees with the Defendants, I suspect I'm going to agree with him. If he agrees with the Plaintiffs, I suspect I'm going to agree with him."

*Law Found. v. Evans,* 203 F.Supp.2d 27, 31, n. 3 (D.D.C.2002) (stating "The Court has been guided in large part by the extremely thoughtful and oft-cited dissent of Judge Tashima in [*AMAE* ]").

 Judge Tashima's recommendations include the following procedural steps: (1) utilize a fair and open procedure for appointing a neutral technical advisor; (2) address any allegations of bias, partiality, or lack of qualification; (3) clearly define and limit the technical advisor's duties; (4) make clear to the technical advisor that any advice he or she gives to the court cannot be based on any extra-record information; and (5) make explicit, either through an expert's report or a record of *ex parte* communications, the nature and content of the technical advisor's advice. *AMAE,* 231 F.3d at 611–14 (Tashima, J., dissenting). On remand, the district court should consider implementing some or all of these safeguards to assure the parties that the court is proceeding openly and fairly. Employment of these standards will aid in appellate review if such review becomes necessary.

## B. Sufficiency of the findings

Despite the district court's failure to clarify the role of Dr. Heber, remand might have been unnecessary if the district court's findings of fact were sufficiently detailed or uncontroverted to justify its decision. *See id.* at 591 & n. 13; *Davis,* 890 F.2d at 1451; *Magna Weld,* 545 F.2d at 671. The district court's findings are neither.

 Enforma argues that the district court's findings of fact are insufficient because they are adopted verbatim from the FTC's conclusory, "boilerplate" order. We agree. The only finding in the district court's injunctive order addressing the FTC's likelihood of success on the merits states:

> There is good cause to believe that Defendants ... have disseminated and are likely to disseminate advertising, packaging and labeling for the products Chitozyme and Acceleron that violate ... the Stipulated Final Order.

Although verbatim adoption of a prevailing party's proposed findings is not automatically objectionable if the findings are supported by the record, *see Unt v. Aerospace Corp.,* 765 F.2d 1440, 1445 (9th Cir.1985), the practice is generally disapproved, *see Lumbermen's,* 645 F.2d at 18–19. The district court's mechanical adoption of the FTC's proposed findings renders them insufficient in this case, where evidence provided by Enforma raises a genuine dispute as to whether the FTC would prevail on the merits and where there is no record of the hearing or conference that preceded the grant of the petition for preliminary injunctive relief.

 The FTC asserts that even if the district court's written findings are insufficient standing alone, the findings are adequate when supplemented by the court's oral findings made on the record five days after the hearing.[11] During the

---

11. Enforma argues that the district court's November 4 findings are irrelevant because Enforma's October 31 appeal deprived the court of jurisdiction. Because the district court made its findings only five days after the injunction was granted, and because the additional findings serve to facilitate review, the jurisdictional argument fails. *See Kern Oil & Ref. Co. v. Tenneco Oil Co.,* 840 F.2d 730, 734 (9th Cir.1988). We have recognized an exception to the general rule that the filing of a notice of appeal divests the trial court of jurisdiction where the district court action aids this court in its review. *In re Silberkraus,* 336 F.3d 864, 869 (9th Cir.2003). The appellate court is "entitled to review a fixed, rather than a mobile, record." *Kern* at 840 F.2d at 734. Additional findings that "move the target" are disfavored. *Id.* Additional findings that merely "set [the target] in place," however, are acceptable. *Id.* The dis-

November 4, 2002 teleconference,[12] the district court supplemented its findings:

> I think that the findings of fact and the order I've signed [are] all right. Essentially, I think there is empirical evidence today on what happens with humans, and so far no showing has been made that the empirical evidence would support any claims at all. I also think that no showing was made—I do think there is an overwhelming showing that the product has been sold as a weight loss product and has been bought ... as a weight loss product, there being no other tenable explanation for why people would buy it at all. As to the scientific information, that, too, was not on the record. As I did say the other day, Professor Heber really reinforced exactly the findings I would have made if ... he'd never appeared at all. He was engaged because [it] appeared that there could be ... a more informed reading of the same information that would support a different conclusion than the one I had reached. But, as you know, he came out exactly the opposite from that.... I do think that the product has been sold on the basis of false representations. And there doesn't appear to be any way that it can be sold in the future without running into the same thing. So I would expect the preliminary injunction to ripen into a permanent injunction rather quickly.... Once

you've reached the conclusions that I have reached rather firmly, albeit on preliminary injunction basis, I'm required to make findings of fact and conclusions of law. These are they. I don't see how I could permit continued sales or a stay of the order when my opinion is that every sale is a fraudulent sale.

The district court's findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *Unt,* 765 F.2d at 1444 (internal citations omitted). Even with the district court's November 4, 2002 findings, we cannot determine whether the district court's rejection of Enforma's evidence is based on one or more of the following factors: (1) Dr. Heber's undocumented opinion; (2) a finding that Enforma's various reports do not constitute "competent and reliable scientific evidence"; (3) a finding that the various reports individually fail to adequately substantiate an effect on humans; (4) an adoption of the FTC's opinion that only double-blind, placebo-controlled clinical studies can satisfy the substantiation requirement; or (5) some other analysis. Enforma's ability to contest the injunction and our ability to review are significantly hampered by the lack of detail in the district court's order.[13]

trict court's November 4 findings serve the latter purpose.

12. We note that the district court's supplemental findings were made during a teleconference in the presence of a court reporter, and not technically "in open court" as required by Fed. R. Civ. Pro. 52(a). Because we find the supplemental findings insufficient, we need not address whether findings made on the record during a teleconference satisfy the "open court" requirement.

13. The FTC cites *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550

(Fed.Cir.1995), in support of its assertion that Enforma waived its right to challenge the district court's findings of fact as insufficient under Fed.R.Civ.P. 52(a) when it failed to request additional findings from the trial court pursuant to Fed.R.Civ.P. 52(b). *Glaverbel,* unlike this case, involves a challenge to the completeness of the court's findings made after a full trial at which the court "specifically invoked the [relevant] criteria" and "thoroughly discussed" the contested issues on the record. 45 F.3d at 1555–56.

The record reveals genuine disputes surrounding each of these possible reasons for the district court's rejection of Enforma's studies. *See Magna Weld*, 545 F.2d at 671. Enforma's challenge to the court's interpretation of Dr. Heber's opinions cannot be reviewed because there is no record of what Dr. Heber said at the October 30, 2002 meeting. There are genuine disputes about the scientific requirements underlying Enforma's substantiation claims. The FTC's own expert appears to have recognized some of the animal and in vitro tests as "competent and reliable scientific evidence," but evidence of a kind that could not "substantiate" Enforma's claims. The FTC's position, which maintains that only double-blind, placebo-controlled clinical testing can serve to "substantiate" Enforma's claims, is not beyond doubt.[14]

Although there is a strong possibility that any one of the district court's possible reasons for rejecting Enforma's evidence would pass "clear error" review, we need not engage in speculation. We remand for factual findings sufficient to determine the basis on which the district court rejected Enforma's studies.

### C. Sufficiency of notice

Enforma contends that it was deprived of due process when the district court entered a preliminary injunction after an informal conference at which there was no mention of an injunction. Federal Rule of Civil Procedure 65(a) requires that no preliminary injunction may be issued without notice to the adverse party. "The notice requirement by Rule 65(a) ... implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc., v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 432, n. 7, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). The FTC provided Enforma adequate notice that it sought a preliminary injunction, and Enforma submitted written opposition. The district court, however, did not provide Enforma adequate notice that the October 30, 2002 proceeding would actually constitute a hearing on the preliminary injunction as opposed to an informal conference. During the October 30 proceeding, Enforma might reasonably have assumed that they would have an opportunity to depose Dr. Heber at a later time. Because of the irregular procedures employed, Enforma may not have had sufficient notice to object to the court's reliance on Dr. Heber until after the court issued the preliminary injunction at the end of the meeting. On remand, the district court should clearly designate a date for a new preliminary injunction hearing, if the court decides that such a hearing is needed.

On remand, the district court should clarify the role and status of any court-

---

**14.** The FTC cites *FTC v. Pantron Corporation*, 33 F.3d 1088 (9th Cir.1994), for example, to support its argument that placebo-controlled testing is required for "competent and reliable scientific evidence" as required substantiation under the consent decree. In *Pantron*, the FTC's expert offered uncontroverted testimony that hair growth studies reflect the existence of a very high placebo effect, *id.* at 1097–98, making placebo control especially important. In addition, the FTC had the burden of proving that the express or implied message conveyed by the advertising in question was actually false. *Id.* at 1096. The FTC cites *Removatron International Corp. v. FTC*, 884 F.2d 1489 (1st Cir.1989), to support the proposition that substantiation under the consent decree requires double-blind studies. But *Removatron* involved the court's review of the appropriateness of an FTC order that specifically defined "competent and reliable scientific evidence" as "adequate and well-controlled, *double-blind* clinical testing conforming to acceptable designs and protocols and conducted by a person or persons qualified by training and experience to conduct such testing." *Id.* at 1498 (emphasis added).

appointed expert and should provide adequate findings of fact, upon notice, supported by a record made in open court.

## IV Appeal No. 02–57078

This appeal is Enforma's challenge to the second preliminary injunction, which relates to the first contempt action involving the products Fat Trapper, Fat Trapper Plus and Exercise in a Bottle. Enforma argues that the district court abused its discretion when it unilaterally amended the parties' proposed stipulated preliminary injunction. Enforma challenges the district court's addition of a contempt finding to the injunction as unsupported by the record and, where no contempt hearing had been held, an abuse of discretion. As in the first appeal, Enforma also challenges the sufficiency of the findings of fact and conclusions of law supporting the second preliminary injunction as well as the district court's reliance on the court appointed expert. We vacate the preliminary injunction in appeal number 02–57078 and remand for further proceedings.

### A. District court's unilateral amendment of the proposed injunction

■ Enforma argues that the district court improperly altered the terms of the parties' proposed preliminary injunction. We agree.

■ First, the district court struck language that would have allowed Enforma to repackage, rather than recall, its products. In the context of consent decrees, a court should inform the parties of its precise concerns about a proposed decree and give affected parties "an opportunity to reach a reasonable accommodation" before rejecting the decree. *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir.1983); *see also United States v. Oregon,* 913 F.2d 576, 582 (9th Cir.1990). This rule reflects the prevalence of contractual principles in determining the enforceability of consent decrees. *Williams,* 720 F.2d at 920. As a consent decree is "no more than a settlement that contains an injunction," *In re Masters Mates & Pilots Pension Plan & IRAP Litig.,* 957 F.2d 1020, 1025 (2d Cir. 1992), the same rule should apply to a stipulated preliminary injunction, which is essentially a proposed injunction that reflects a temporary settlement. The district court did not provide Enforma with a fair opportunity to address the court's concerns when it unilaterally modified the parties' proposed stipulation.

■ The district court also added language to the injunction stating that it had found Enforma in contempt at the October 30, 2002 hearing. This is a clearly erroneous finding. The district court could not have adjudicated the contempt issue during the October 30 hearing because the court did not issue the order to show cause until the conclusion of the hearing. Moreover, the record reflects that the district court set a hearing date to determine the contempt issue for November 18, 2002, over two weeks after the October 30 meeting. This language should be deleted.

We remand with instructions that the district court should air its objections to the parties' proposed stipulated injunction (if any remain) and provide the parties an opportunity to address the court's concerns.

### B. Sufficiency of the findings

■ Despite the district court's error in unilaterally amending the parties' stipulated injunction, we might be able to affirm the injunction if the district court's order could be defended on its own merits. Standing on its own, however, the injunction in the first contempt action suffers from the same insufficient findings of fact and conclusions of law that lead us to vacate and remand the injunction in the

second contempt action. If the district court elects to enter a preliminary injunction that varies from the injunction the parties proposed, it should be supported by findings of fact and conclusions of law entered on the record and upon notice to the parties. In light of our holding, we need not reach Enforma's additional challenges to the injunction relating to the first contempt action.

## V Conclusion

In Appeal No. 02–56842, we vacate the preliminary injunction in the second contempt action because of the deficiencies in the district court's findings. We remand for findings of fact and conclusions of law made on the record, upon notice, and for clarification regarding the role of the court-appointed expert. On remand, the district court may re-appoint Dr. Heber or another expert. The court should clarify the role of any expert it appoints and may look to the safeguards outlined in this opinion for guidance.

In Appeal No. 02–57078, we vacate the preliminary injunction in the FTC's first contempt action based on the district court's unilateral alteration of the parties' proposed stipulated injunction without giving the parties an opportunity to object. We remand to the district court so that it might reconsider the parties' proposed stipulated injunction and allow the parties to address any objections that remain. Alternatively, the district court may issue its own preliminary injunction in the first contempt action upon notice supported by ad-equate findings of fact and conclusions of law.[15]

**REVERSED AND REMANDED.**

---

**15.** In a November 12, 2003 order, the district court granted in part and denied in part Enforma's motion to deny the FTC's contempt applications. To the extent that the preliminary injunctions remain relevant in light of the district court's November order, the district court shall, on remand, act upon the preliminary injunction request in appeal no. 02–56842 and the proposed stipulated preliminary injunction in appeal no. 02–57078 in accordance with this opinion. In response to Enforma's December 3, 2003 Federal Rules of Appellate Procedure 28(j) letter and the FTC's December 4, 2003 response, the district court shall clarify for the parties the scope of its November order.