PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 19-3150

———————————

TEAMSTERS LOCAL 177,

Appellant

v.

UNITED PARCEL SERVICE

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-19-cv-00726)
District Judge: Honorable Kevin McNulty

———————————

Argued April 14, 2020

Before: AMBRO, JORDAN, and SHWARTZ, Circuit Judges

(Opinion filed July 16, 2020)

Edward H. O'Hare (Argued)
Raymond M. Baldino

Zazzali Fagella Nowak Kleinbaum & Friedman
570 Broad Street, Suite 1402
Newark, NJ 07102

      Counsel for Appellant

Michael T. Bissinger
Michael H. Dell (Argued)
Day Pitney
One Jefferson Road
Parsippany, NJ 07054

      Counsel for Appellee

─────────────

OPINION OF THE COURT

─────────────

AMBRO, <u>Circuit Judge</u>

We address how Article III standing principles apply in proceedings to confirm arbitration awards under § 9 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 9. Teamsters Local Union No. 177 ("Local 177" or the "Union") sought confirmation of an arbitration award in its favor (the "Award") per § 9, which provides that a district court "must grant" a confirmation order for an award upon application where the award has not been "vacated, modified, or corrected" under applicable provisions of the FAA. § 9. United Parcel Service, Inc. ("UPS"), the loser in arbitration, opposed confirmation and filed a cross-motion to dismiss, arguing that the District Court did not have subject-matter jurisdiction because there was no case or controversy as required by Article III of the Constitution, given that UPS agreed to abide by the Award and

corrected any subsequent violations of it. The District Court denied the Union's motion to confirm and granted UPS's motion to dismiss on the ground that it lacked subject-matter jurisdiction. It acknowledged a circuit split on whether a court may confirm an award absent an active dispute.

We reverse and hold that the District Court had subject-matter jurisdiction to confirm the Award even in the absence of a new dispute about it. We agree with the Second Circuit that "the confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). Confirmation is the process through which a party to arbitration completes the award process under the FAA, as the award becomes a final and enforceable judgment. *See* 9 U.S.C. § 13. The FAA not only authorizes, but mandates, that district courts confirm arbitration awards by converting them into enforceable judgments through a summary proceeding.

## I. FACTUAL AND PROCEDURAL BACKGROUND

UPS and the Union are parties to a collective bargaining agreement (the "Agreement"). It was in effect from August 1, 2013 through July 31, 2018, and it governed the terms and conditions of employment of bargaining unit employees, including package car drivers who operate the ubiquitous brown UPS trucks and provide delivery and pick-up services.

Local 177 represents more than 9,000 workers employed at various UPS facilities in northern and central New Jersey, and New York City and Orange County in New York. Article 46, Section 3 of the Agreement groups areas of principal responsibility. Drivers are assigned to particular UPS buildings, called "home centers," but may be assigned to other

3

buildings in other areas, subject to the restrictions of Section 2 of Article 46. That Article provides in relevant part:

**SECTION 2**

It is understood that employees may be assigned in classification to work in their home center or at places other than their home center, as follows:

(a.) Employees will be required to accept assignments, within classification, when ordered, anywhere within their area.

(b.) Any employee who refuses an assignment out of his/her classification under the above conditions will forfeit their rights to report pay.

**SECTION 3**

For the purposes of other assignments, the following areas are applicable:

(1) Lakewood, Tinton Falls, Trenton

(2) Edison, Staten Island, Gould Avenue, Meadowlands

(3) Parsippany, Bound Brook, Mt. Olive

(4) Chester, New Windsor

(5) Saddle Brook, Spring Valley.

J.A. 24. Section 3 is known as the "sister building" provision. When drivers are assigned to work at a place outside their home center, as permitted in Section 2, then Section 3 governs where those drivers may be sent. The locations grouped in

4

subsections (1) through (5) represent those groupings, known as "sisters." For example, a Lakewood domiciled driver may be assigned to work in the sister building in Tinton Falls or Trenton. Forbidden, however, would be the assignment of a Lakewood driver to Staten Island. These restrictions are the product of negotiations spanning several decades.

Article 44 of the Agreement contains mandatory grievance and arbitration procedures. It provides that if a matter is brought to arbitration, the arbitrator has the authority to decide the grievance, and that decision "shall be final and binding on the parties and employees involved." J.A. 17–18.

The Union filed two grievances, one in July 2014 and the other in February 2015, respectively, alleging that UPS violated Article 46. The July 2014 grievance alleged that New Windsor drivers were improperly assigned to Spring Valley. The February 2015 grievance alleged a Chester driver was also improperly assigned to Spring Valley.

UPS denied the grievances, and the Union filed a demand for arbitration. During the arbitration hearing, both parties were represented by counsel and had the opportunity to present testimony along with documentary evidence and to make arguments. The Arbitrator sustained the grievances and ordered UPS to "cease and desist assigning package car drivers to work in buildings outside the areas designated in Article 46, Section 3 of the parties' . . . Agreement." J.A. 47. UPS "accept[ed] the Award," and has never sought to challenge or vacate it. J.A. 49.

The Union alleges, and UPS does not deny, that the latter has subsequently violated the Award. In April 2018 it did so by assigning a driver outside his contractually designated area. Local 177 Secretary-Treasurer Chris Eltzholtz informed UPS District Labor Manager Steve Radigan

5

of the violation. Eltzholtz later became aware of two more violations. Radigan acknowledged them and assured Eltzholtz that the situation was corrected and would not occur again. In June 2018, Eltzholtz learned that UPS had nonetheless violated the Award by assigning a driver to work outside a designated area. He informed Radigan of the new violation. Eltzholtz then traveled to a UPS facility in New Windsor, New York, and personally witnessed UPS about to violate the Award yet again by assigning a driver outside his assigned area. Eltzholtz brought this to the attention of management, and it stopped the violation from occurring. The Union ultimately obtained a monetary settlement for these violations.

Thereafter, the Union moved for confirmation of the Award under § 9 of the FAA, which provides in relevant part that,

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon *the court must grant* such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added). The Union argues that it petitioned for confirmation in light of UPS's repeated violations and to preserve its rights in case of future violations. UPS opposed the Union's motion and filed a cross-motion to dismiss, arguing that the District Court did not have jurisdiction because confirmation requires a pending case or controversy about the arbitration award, and no case or controversy existed, as there were no ongoing violations.

6

In its decision, *Teamsters Local Union No. 177 v. United Parcel Servs.*, 409 F. Supp. 3d 285 (D.N.J. 2019), the District Court acknowledged a circuit divide on whether a court may confirm an award in a labor arbitration absent a then-existing dispute about the arbitration award. *Id.* at 290. It noted that the First Circuit has held that confirmation is not proper without an active controversy, *see Derwin v. Gen. Dynamics Corp*., 719 F.2d 484, 492–93 (1st Cir. 1983), while the Second Circuit has held that a district court must confirm an arbitration award if the statutory requirements are met even absent a new dispute, *see Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007); *see also Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987); *Florasynth*, 750 F.2d 171. When the District Court followed *Derwin*, the Union appealed to us.

## II.     JURISDICTION

The District Court had statutory subject-matter jurisdiction under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, along with the usual federal question jurisdiction accorded by 28 U.S.C. § 1331.[1]

---

[1] Section 9 of the FAA does not provide an independent basis for subject-matter jurisdiction, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 25, n.32 (1983); *Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 255 (3d Cir. 2016), but § 301 of the LMRA does, *see Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 815 n.2 (3d Cir. 2004). Even where a complaint does not expressly plead LMRA claims, courts usually consider it to state a claim under § 301 if it pertains to violations of contracts between an employer and a labor organization. *See Allis–Chalmers Corp. v. Lueck*, 471

That there is federal statutory and federal question jurisdiction is clear. The harder question—the one before us here—is whether there was a sufficient "case or controversy" under Article III so as to confer jurisdiction on the District Court.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* the District Court's order granting a motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

## III. DISCUSSION

To repeat, UPS argues that the District Court lacked subject-matter jurisdiction to confirm the arbitration award under FAA § 9 because, post-Award, there was no longer a "case or controversy," which the Constitution's Article III requires.

### A. Confirmation — the Final Step and Remedy in Arbitration

To establish that a "case or controversy" exists, a party seeking relief must have, among other things, standing. In legal jargon this requires that a plaintiff show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Think of standing as a stake in the outcome, and what a court does can help a party claiming to be hurt. For example, a plaintiff whose injuries have been fully remedied before

---

U.S. 202, 220 (1985); *Berda v. CBS Inc.*, 881 F.2d 20, 21 n.1 (3d Cir. 1989).

seeking judicial relief cannot show a sufficient risk of imminent injury, and thus lacks standing. *Cf. Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 136–37 (3d Cir. 2000) (holding that putative class representatives who settled their claims through administrative means prior to filing their complaint lacked standing). And Congress cannot by statute grant courts jurisdiction where there is no case or controversy. *See Muskrat v. United States*, 219 U.S. 346, 362–63 (1911) (holding that Congress could not confer on federal courts the ability to hear a matter if it lacked a "case or controversy").

The parties do not dispute that the causation and redressability prongs of the standing analysis are satisfied; only at issue is whether Local 177 was injured. UPS argues that, because it has agreed to abide by the arbitration award and has remedied any violations of it thus far, the case-or-controversy requirement is not satisfied, as the Union has not suffered and will not imminently suffer an injury.

We disagree. Under the FAA a party's injuries are only fully remedied by the entry of a confirmation order. The statute "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n.32. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements . . . , and to place arbitration agreements upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation and internal quotation marks omitted). Once parties contract to settle their disputes by arbitration, federal courts become involved only in limited circumstances for limited purposes.

The FAA "authorizes district court involvement in the arbitration process primarily in two ways." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998).

9

The first is "when a party resists arbitration under an existing arbitration clause." *Id.* (citing 9 U.S.C. §§ 3, 4). Second, "when enforcement of an arbitration award is sought[,] . . . the statute authorizes the district court to confirm, vacate, or modify the award under a narrow scope of judicial review." *Id.* (citing 9 U.S.C. §§ 9–11); *see also Isidor Paiewonsky Assoc., Inc. v. Sharp Prop. Inc*., 998 F.2d 145, 154 n. 11 (3d Cir. 1993). Specifically, the FAA provides in relevant part that a court, save exceptions not before us, "must grant" a timely request for an arbitration award. § 9.[2] Once confirmed, an arbitration award becomes a judgment of the court, entitled to "the same force and effect, in all respects, as, and . . . subject to all the provisions of law relating to, a judgment in [any other] action." § 13.

Thus, barring any dispute whether the arbitration award shall be vacated, modified, or corrected, it is confirmation under § 9 that converts the award into a judgment of the court and completes the arbitration process under the FAA framework. This puts an award on the "same footing" as other legally enforceable documents. *Waffle House*, 534 U.S. at 289. Put another way, the dispute the parties went to arbitration to resolve is "live" until the arbitration award is confirmed and the parties have an enforceable judgment in hand. *See, e.g.*, *Ameriprise Bank, FSB v. PNC Bank, N.A*., No. 12-cv-1113, 2012 WL 5906400, at *9 (W.D. Pa. Nov. 26, 2012) (holding that "a federal court constrained by Article III may confirm an award even in the absence of a new dispute involving the award's application or enforcement" because the "controversy between the parties remains live until the arbitral award is confirmed"); *National Football League Players Assoc. v. National Football League Mgmt. Council*, No. 08-cv-3658,

---

[2] The parties do not dispute that the Agreement includes a provision for confirmation of the Award in court.

2009 WL 855946, at *3–4 (S.D.N.Y. Mar. 26, 2009) (holding the district court had jurisdiction to confirm an arbitration award absent a new dispute about the award and stating that "[t]he real question is whether . . . the Court should impose a new requirement that, in addition to the dispute which clearly exists between the parties on [the underlying issue being arbitrated], one of the parties must raise a new dispute in order to have the arbitral award confirmed").

The FAA explicitly requires that arbitration awards be confirmed. What could be stronger than language that, upon application, a district court "must grant [a confirmation] order" unless the arbitration award is "vacated, modified, or corrected." § 9. The Supreme Court tells us that § 9 "carries no hint of flexibility." *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id*. (quoting § 9). The Court further noted that § 9 "suggests that, so long as the parties contemplated judicial enforcement, the court must undertake such enforcement under the statutory criteria." *Id*. at n.6.

We agree with the Second Circuit that "the confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth*, 750 F.2d at 176 (citation omitted). That Circuit has long held that district courts have jurisdiction to confirm arbitration awards even in the absence of a new dispute about them. In *Florasynth,* it reasoned that an "[a]n examination of the underlying purposes of the arbitration mechanism" supported this conclusion, as confirmation arms the winning party of an arbitration "with a court order . . . [and] a variety of remedies available to enforce the judgment." 750 F.2d at 176; *see also Zeiler*, 500 F.3d at 169 ("Confirmation . . . is a summary proceeding . . . , which is not intended to

11

involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm. . . . At the confirmation stage, the court is not required to consider the subsequent question of compliance."); *Ottley*, 819 F.2d at 377 ("[A]ctions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated. . . . [I]n a confirmation proceeding, the court properly may consider only the statutory bases for modifying or vacating an award and challenges to the award's clarity.").

Confirming an arbitration award under § 9 is not to be confused with litigating a dispute over the validity or accuracy of that award under § 10 or § 11, or seeking later to enforce that arbitration award where there is noncompliance. Section 9 expressly provides for confirmation in the absence of such disputes. Once a court confirms an arbitration award and makes it a judgment of the court, noncompliance with that order is separately analyzed. *See Am. Nursing Home v. Local 144*, No. 89-cv-1704, 1992 WL 47553, at *2 (S.D.N.Y. Mar. 4, 1992) ("The issues of compliance and confirmation are distinct . . . . [C]onfirmation of an arbitration award . . . is not a novel inquest into the merits of the award or compliance with it . . . ." (internal citation and quotation marks omitted)). Without a confirmation order, the parties would essentially have to relitigate the case via a suit to enforce the arbitration award. But where there is such an order, and one of parties violates it, the court applies the analysis as when one of its orders is defied—it can penalize the non-complying party through contempt proceedings or the issuance of injunctive relief. Contempt proceedings and a trial over the underlying dispute are clearly very different than the summary proceeding provided for by § 9.

Thus, like the Second Circuit, we view the confirmation of an arbitration award as the final step in arbitration

12

proceedings under the FAA where there is no dispute about the validity or accuracy of that award under § 10 or § 11. As a result, a party seeking to confirm an arbitration award continues to have a live stake in the proceeding, and thus it has standing to seek confirmation.[3]

---

[3] We limit our holding to an award for equitable relief and express no opinion as to whether a party that receives an arbitration award for money damages has standing to confirm the award in federal court after those damages are paid in full.

Additionally, we note that an alternative way of understanding why confirmation of an arbitration award satisfies the jurisdictional existing or imminent injury-in-fact prong is to view confirmation as a statutory right created by the FAA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545–49 (2016) (stating that the Fair Credit Reporting Act of 1970 created a statutory right to fair and accurate credit reporting, and remanding for further assessment of whether the injury was sufficiently particularized and concrete). Parties to arbitration forgo litigation with the expectation that under the FAA they will be able to obtain a judgment at the end of the process under § 9. A party to arbitration suffers an injury when he is denied the right to obtain confirmation, for it is the judgment that makes the party whole and concludes the arbitration process. Our case exemplifies this point. UPS has recently and repeatedly violated the Award. And although it states that it will comply and refrain from violating the Award further, that promise does not have the force of a judgement. If UPS violates the Award again, the Union may be forced to relitigate the case. We need not engage in this separate jurisdictional analysis, however, because the principle is well established that district courts can preside over summary

13

## B.    Summary Proceedings and the District Court's Imprimatur

In the interest of further explaining the path forward, we analogize the confirmation of arbitration awards to other summary proceedings in which a district court enters orders without the parties filing complaints and appearing before it to litigate a matter in full.  For example, courts enter investigatory subpoenas *ex parte* without the filing of a formal complaint and hold summary proceedings to enforce Securities and Exchange Commission orders.  *See, e.g.*, *S.E.C. v. McCarthy*, 322 F.3d 650, 657 (9th Cir. 2003) (holding that Section 21(e) of the Exchange Act of 1934 permits the use of summary proceedings in district courts to enforce Commission orders); *S.E.C. v. Sprecher*, 594 F.2d 317, 319–20 (2d Cir. 1979) (holding that the Securities Act of 1933 authorizes district courts to order enforcement of investigatory subpoenas on application by the S.E.C. in a summary proceeding without the filing of complaints by the Commission (citations omitted)).

The Supreme Court has held summary proceedings permissible where expressly authorized by statute.  *See New Hampshire Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 406–07 (1960).  Confirmation of arbitration awards is also a summary proceeding.  And it is authorized by § 9 of the FAA.  In *Scanlon*, the Supreme Court explained that "[t]he very purpose of summary . . . trials is to escape some or most of these trial procedures."  *Id*. at 406.  They may be "conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even ex parte."  *Id*; *see also Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, Rock Island & Pacific Railway Co.*, 294 U.S. 648, 682 (1935) (holding that district court could

proceedings (such as entering consent decrees or confirming arbitration awards) where there is statutory authorization.

preside over summary proceedings "without the formality in respect of pleadings which is required in actions at law or suits in equity").

The summary proceeding perhaps most analogous to the confirmation of arbitration awards is the entry of consent decrees. They are orders or judgments that reflect the settlement terms agreed by the parties and contain an injunction. *See United States v. ITT Cont'l Baking Co*., 420 U.S. 223, 236 n.10 (1975) (stating that consent decrees "have attributes both of contracts and of judicial decrees" and a "dual character"); *FTC v. Enforma Natural Prods., Inc*., 362 F.3d 1204, 1218 (9th Cir. 2004) ("[A] consent decree is 'no more than a settlement that contains an injunction.'" (quoting *In re Masters Mates & Pilots Pension Plan & IRAP Litig*., 957 F.2d 1020, 1025 (2d Cir. 1992))). District courts have the power to enter consent decrees without first determining that a statutory or constitutional violation has occurred. *See Swift & Co. v. United States*, 276 U.S. 311, 327 (1928). *Cf. Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 389 (1992). They "must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction . . . . and must further the objectives of the law upon which the complaint was based." *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986) (citations omitted)*; see also Sansom Committee by Cook v. Lynn*, 735 F.2d 1535, 1538 (3d Cir. 1984) (stating that a district court has authority to enter a consent decree "as long as [its] terms . . . come within the general scope of the case made by the pleadings . . . [and] if the pleadings state a claim over which a federal court has jurisdiction." (internal citations and quotation marks omitted)).

Here the FAA provides for confirmation proceedings to be summary proceedings akin to the entry of consent decrees by requiring that the parties "apply" for confirmation rather than file a complaint. 9 U.S.C. § 9. "An 'application' is merely

15

a 'motion,'" or a request for the court to make a particular ruling or enter a particular order, and not a formal lawsuit or "action." *McCarthy*, 322 F.3d at 657 (citations omitted). This distinction applies to the FAA with equal force, as the statute specifically provides for an "application" for confirmation.

Moreover, courts do not resolve these applications for relief using procedures for ordinary civil actions because the FAA provides for applications to be made and heard as motions rather than the filing of a complaint. 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of *motions*, except as otherwise . . . expressly provided [in the FAA]." (emphasis added)); Fed. R. Civ. P. 81(a)(6)(B) (providing that the Federal Rules of Civil Procedure apply only to the extent procedures are not provided for under the FAA); *Champ v. Siegel Trading Co., Inc*., 55 F.3d 269, 275–76 (7th Cir. 1995) (stating that Rule 81 provides that the Federal Rules apply only to the extent that matters of procedure are not provided for under the FAA); *Booth v. Hume Pub., Inc*., 902 F.2d 925, 931 (11th Cir. 1990) (same). As the FAA expressly provides for an "application" for confirmation, does not instruct parties to file a complaint, and does not instruct the district court to carry on a formal judicial proceeding, § 9 indeed calls for a summary proceeding.[4]

---

[4] Whether a proceeding is "summary" in nature, of course, does not address how Article III's standing limitations apply to that proceeding. Its summary nature defines only the procedures employed for motion practice, discovery, and so forth; it does not address whether the proceeding requires a live case or controversy in order to proceed. Nevertheless, for the reasons stated in this opinion, we hold that Local 177 demonstrated a live controversy here.

16

Accordingly, we hold that the District Court had jurisdiction to confirm the Award under § 9 of the FAA even in the absence of a new dispute about its terms because the underlying dispute between the parties remains live until entry of that order. Confirmation is the final step of the FAA's arbitration process. By a truncated summary proceeding, the FAA directs district courts to give their imprimatur to arbitration awards by converting them into enforceable judgments of the court.

## C. The Illogical Consequences of Requiring a New Dispute Before Confirmation

We also note the practical absurdity and harmful consequences of holding that district courts cannot confirm arbitration awards in the absence of a new dispute. First, if we allow UPS to challenge confirmation of the arbitration award at this stage, we would be allowing it to upend and undermine the statutory scheme of the FAA. That scheme expressly gives more time to the parties to move for confirmation than to dispute the award. While the statute of limitations for confirmation of arbitration awards under the FAA is one year, 9 U.S.C. § 9, the time for moving to vacate or modify the award is three months, *see* § 12. If the party seeking confirmation makes its application after that three-month period elapses, then the opposing party cannot, as a matter of law, assert a § 10 or § 11 ground for vacating, modifying or correcting an award, even as affirmative defenses to the application to confirm. *See Florasynth*, 750 F.2d at 175. UPS is effectively challenging the arbitration award well outside the three-month statute of limitations.

Second, requiring a new dispute about the arbitration award would allow, or even incentivize, the party that lost at arbitration to defeat confirmation simply by claiming it agrees to abide by the Award. In the worst-case scenario, the losing

17

party could wait until after the statute of limitations to confirm an award has run to start violating it, and the winning party would be left to relitigate the case. That UPS says it will stop moving employees outside of their home centers does not mean there was no injury to the Union's members who were moved when the Award was violated previously, and it does not mean that the Union does not have a right to seek compliance with the Award in the future. UPS cannot "defeat or frustrate confirmation simply by claiming acquiescence with the [A]ward[,]" and Local 177 is "entitled to obtain judicial confirmation in order to protect its rights under the award . . . ." *National Football League Players Assoc.*, 2009 WL 855946, at *3.

### D.    Parting With First Circuit Precedent

In light of these considerations, we are not persuaded by the approach taken by the First Circuit in *Derwin*, 719 F.2d 484, and adopted by the District Court. In *Derwin*, representatives of a union sought confirmation of an arbitration award issued under a collective bargaining agreement between the union and a corporate employer. The former did not allege any instances where the employer refused to abide by the award. Rather, it relied on the language of the applicable state statute, which, like the FAA, provided for a right to confirmation when no party had challenged the award within 30 days after issuance of it. *Id*. at 486. *Derwin* held that confirmation was "unwarranted," and noted that

> [t]he union's application for confirmation— unlike the usual complaint seeking confirmation of an arbitrator's award—does not seek resolution of a concrete dispute between the parties. The union does not allege that the company has repudiated or violated the award in some particular calling for judicial resolution.

18

> No relief involving specific enforcement of the
> . . . award is requested.

*Id.* The Court declined to "put its imprimatur upon an arbitral award in a vacuum" and dismissed the action to confirm it. *Id.* at 491–93. It reasoned that judicial economy counseled against the entry of a confirmatory award, and that a more economical approach was to require that confirmation petitions allege an actual violation or other dispute entitling the party to some relief. *Id.* at 492.

However, the First Circuit did not consider the mandatory language of the FAA, it did not consider whether an arbitration dispute was ongoing until confirmation of the arbitration award, and, puzzlingly, it considered instead how the limitations period in the state statute affected its jurisdiction. It reasoned that because in the case before it the time to sue was either six or twenty years, the union would have plenty of time to seek to enforce the award if a dispute arose. Recognizing the need for confirmation under certain circumstances, the Court nonetheless allowed that there would be a "most compelling basis" for confirmation even without a pending dispute in some instances:

> If there were a strict limitations period for actions to confirm, one could reasonably argue that, even in the absence of any current dispute over an award's effort, a party should be entitled to obtain judicial confirmation in order to protect its rights under the award from lapse due to the passage of time.

*Id.* The Court did not explain why the statute of limitations would affect whether it has jurisdiction to hear the case.

19

The District Court here followed the First Circuit and specifically relied on the latter's statute-of-limitations reasoning. In its analysis the District Court held that "two potentially dispositive factors" emerged from the case law: "(1) whether there is an ongoing dispute over the terms or enforcement of the award; and (2) whether there is a realistic probability that the employer can wait out the limitations period and violate the arbitration award when it is too late for the union to obtain judicial relief." *United Parcel Servs.*, 409 F. Supp. 3d at 293. It acknowledged that if a one-year statute of limitations applied, like in the FAA, there would "surely be a realistic possibility that UPS could violate the order after it was too late for the Union to seek judicial confirmation." *Id.* at 294. Yet the Court, relying on *Derwin*, applied the longer six-year statute of limitation under New Jersey law, and determined that such a period would give the Union "plenty of time to bring an action to confirm the award should a problem arise." *Id.*

Neither the First Circuit nor the District Court here explained, however, how the ability of the winning party in an arbitration to file suit later has any bearing on the existence of a "case or controversy." Both ignored that statutes of limitations and a court's power to hear a case are separate questions. Accordingly, we decline to follow the First Circuit's holding that a new dispute is required before an arbitration award can be confirmed, and we reverse the judgment of the District Court.

We remand with instruction for the Court to confirm the Award unless the statutory grounds for rejecting it are satisfied.

20