**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

April 4, 2023

Michael A. Barlow, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Lewis H. Lazarus, Esquire
Morris James LLP
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

> RE: *Tenet Healthcare Corporation, et al. v. Steward Health Care System LLC, et al.,*
> Civil Action No. 2022-0774-MTZ

Dear Counsel,

Thank you, again, for your patience with this matter. As you know, the parties dispute whether an arbitration award secured under one provision of an asset purchase agreement is subject to offsets contemplated by another provision of that agreement. That dispute has manifested in the respondent's motion to modify or stay that arbitration award (the "Motion"), which has been briefed, argued before Vice Chancellor Glasscock, and further framed by the parties' January 4 letters and our conversation earlier this month after the Motion's reassignment to me.[1] For the reasons that follow, I believe the Motion should be denied and the award confirmed.

The Motion's grounds for modifying the award are rooted in the terms of the governing asset purchase agreement (the "APA").[2] The parties have joined issue over whether an arbitration award under Section 2.5(c) of the APA (the "Award") should be confirmed and remitted as awarded, or whether the Award is properly subject to a potential set-off under Section 8.18. In another action, *Steward Health Care System, LLC v. Tenet Business Services Corporation*, C.A. No. 2022-0289-SG (the "Set-off Litigation"), the parties dispute the extent of any set-off under Section 8.18. In this action, the petitioners seek confirmation of the Award but are willing to stand by on collecting it so long as the awarded amount is escrowed or secured pending resolution of the Set-off Litigation. They suggest that the propriety of any

---

[1] Docket Item ("D.I.") 36, D.I. 44, D.I. 47, D.I. 48 Ex. A, D.I. 60, D.I. 66, D.I. 69.

[2] D.I. 1, Ex. B [hereinafter "APA"].

set-off could then be determined in a consolidated action. The respondents ask the Court to decide the interplay between Section 2.5(c) and Section 8.18 as a matter of law, and then (assuming the Court finds the Award could be set off) order that the Award would not be collectable until the amount of any set-off is determined.

The APA and its performance is governed by Delaware law,[3] which provides that as in the APA, in the absence of an explicit reference to the Delaware Uniform Arbitration Act, arbitration-related disputes are to be decided in conformity with the Federal Arbitration Act.[4] Reflecting Delaware's policy favoring arbitration "to avoid expensive litigation and settle disputes without undue delay,"[5] the standard for modifying an arbitration award is high[6] and borne by the party contesting the award.[7] The court will modify an arbitration award where:

1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or,

3) The award is imperfect in a matter of form, not affecting the merits of the controversy.[8]

"To determine what contractual parties intended, Delaware courts start with the text."[9] In doing so, the Court aims to "'give priority to the parties' intentions as

---

[3] APA § 10.3.

[4] 10 *Del. C.* § 5702(c).

[5] *Baltimore Barn Builders v. Jacobs*, 1990 WL 237094, at *1 (Del. Ch. Dec. 17, 1990).

[6] *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732 (Del. Ch. 2008) (providing for modifications under the FAA).

[7] *Roberts v. Shelly's of Delaware, Inc.*, 1982 WL 17827, at *4 (Del. Ch. Nov. 9, 1982).

[8] *Baltimore Barn Builders*, 1990 WL 237094, at *1; *TD Ameritrade*, 953 A.2d at 731.

[9] *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).

reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions."[10] The Court will "give effect to the plain-meaning of the contract's terms and provisions," "will read a contract as a whole and . . . will give each provision and term effect, so as not to render any part of the contract mere surplusage."[11]

Article II of the APA addresses "Transactions at the Closing." Within that topic, Section 2.5 addresses the means of calculating and paying the "Purchase Price," defined as

> an amount equal to (a) $1,100,000,000, plus (b) the amount, if any, by which the Actual Net Working Capital exceeds the Target Net Working Capital, minus (c) the amount, if any, by which the Target Net Working Capital exceeds the Actual Net Working Capital, minus (d) the Actual Capital Lease Amount plus (e) the DPP Payment Amount.[12]

Section 2.5(c) provides procedures for arriving at a "resulting Purchase Price" based on Actual Net Working Capital and Actual Capital Lease Amounts, including submitting disputes over those amounts to an arbitrator.[13] Section 2.5(c) provides the arbitrator shall provide a "final, binding and conclusive resolution" of those particular disputes, and that "judgment may be entered upon the written determination of the Arbitrator in accordance with Section 10.4," which waives a jury trial.[14] The parties disputed net working capital and followed Section 2.5(c)'s procedures; the arbitrator resolved that dispute and issued an award in favor of the sellers in the amount of $20,325,075.00 (the "Award"); and petitioners filed in this Court to confirm that award and obtain a judgment.

---

[10] *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) (internal quotation marks omitted) (quoting *GMG Cap. Inv., LLC. v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).

[11] *Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1159–60 (Del. 2010)*; *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010).

[12] APA § 1.1.

[13] APA § 2.5(c).

[14] APA §§ 2.5(c), 10.4.

Section 2.5(d) goes on:

> Subject to each Party's rights set forth in <u>Section 8.18</u>, if the Purchase Price, as finally determined pursuant to <u>Section 2.5</u>, is (i) greater than the Estimated Purchase Price, Buyers will promptly pay to Sellers an amount equal to the difference between the Purchase Price and the Estimated Purchase Price in immediately available funds, or (ii) is less than the Estimated Purchase Price, Sellers will promptly pay to Buyers an amount equal to the difference between the Purchase Price and the Estimated Purchase Price in immediately available funds.[15]

Section 2.5(d) orders prompt payment of any difference between the Purchase Price and the Estimated Purchase Price: it is this obligation that is "[s]ubject to each Party's rights set forth in <u>Section 8.18</u>."[16]

And Section 8.18 provides:

> **<u>Set-Off Right.</u>** Buyers, on the one hand, and Sellers, on the other, shall be entitled to set-off or recoup against amounts due by such Party pursuant to this Agreement any amounts due or payable by Buyers or any other Buyer Indemnified Party, in the case of the Sellers, or by Sellers or any other Seller Indemnified Party (including for the avoidance of doubt, Conifer Revenue Cycle Solutions, LLC), in the case of Buyers, pursuant to this Agreement, including any amounts due by Buyers under the Transition Services Agreement, Revenue Cycle Master Services Agreement, Medicare Transition Services Agreement, and any amounts due by either Party pursuant to the purchase price adjustment due pursuant to <u>Section 2.5(d)</u>, any amounts due pursuant to <u>Section 8.16</u> and any indemnification payment due pursuant to <u>Sections 9.1</u> or <u>9.2</u>, but excluding any amounts due to Buyers pursuant to the Revenue Cycle Master Services Agreement. The exercise of such

---

[15] APA § 2.5(d).

[16] APA § 2.5(d).

set-off right by a Party, whether or not ultimately determined to be justified, shall not constitute a breach of this Agreement.[17]

I believe the plain terms of the APA are readily interpreted, which supports undertaking that task up front. Section 2.5(c)'s provisions for obtaining and judicially confirming an Award stand on their own. Under the plain meaning of Section 2.5(c), the Award is final, binding, conclusive, and susceptible to being reduced to a judgment. In the meantime, and in the background, other sources of set-offs arise under Section 8.18: by way of relevant example, amounts come due under Section 8.16 on a monthly basis. But by its plain terms, Section 2.5(c) is not subject to Section 8.18. The plain terms of Sections 2.5(d) and 8.18 subject only Section 2.5(d) to Section 8.18.

Certainly, an award under Section 2.5(c) informs a final determination of the Purchase Price under Section 2.5, to be paid under Section 2.5(d) subject to Section 8.18. But that practical truth does not bear on the procedural mechanisms of Section 2.5(c) set forth in plain text. Nothing in the APA subjects any award under Section 2.5(c) to Section 8.18.

Further, Section 8.18 requires a set-off to be "due or payable"; *Post Holdings, Inc. v. NPE Seller Rep LLC* explains such language requires the set-offs to be liquidated.[18] To borrow from *Post Holdings*:

At common law, a contingent or unmatured obligation which is not presently enforceable cannot be the subject of set-off or, put differently, there is no right to set-off of a possible unliquidated liability against a liquidated claim that is due and payable. Delaware law, of course, encourages parties to contract freely to create those contractual rights they see fit. Thus, the parties certainly could have created a contractual

---

[17] APA § 8.18.

[18] 2018 WL 5429833 (Del. Ch. Oct. 29, 2018); *see also CanCan Development, LLC v. Manno*, 2011 WL 4379064 (Del. Ch. Sept. 21, 2011) (concluding a litigant "has no right to set-off [the adversary's] unliquidated potential liability . . . against [its] liquidated, due, and payable claim"). The cases cited in the Motion favoring a setoff addressed liquidated amounts. *UBS Fin. Servs., Inc. v. Riley*, 2012 WL 1831720 (S.D. Cal. May 18, 2012); *Pochat v. Lynch*, 2013 WL 4496548 (S.D. Fla. Aug. 22, 2013).

right to permit [respondent] to net against a[n arbitration award] to be remitted . . . the amount of a[] claim [pursuant to Section 8.16]. In one case, for example, this court found that the parties had done so where the contract stated that a party may "set off all or any portion of the claimed amount of any . . . Direct Claim." Here, however, the parties did not do so. Instead, the plain language of Section [8.18] expressly limits what [respondent] can net against [the Purchase Price] to the amount of an indemnification payment that is "[due]," which implies that the "indemnification payment" in question is for a presently payable amount and not some uncertain amount that is contingent in nature.[19]

Until the Set-off Litigation is resolved, the disputed set-offs are not "due," or "due or payable," under Section 8.18. Therefore, even if Section 8.18 offered a set-off against a Section 2.5(c) arbitration award specifically, which I do not believe it does, the common law and language of Section 8.18 makes that set-off available only once the claims in the Set-Off Litigation are liquidated. The parties agreed in Section 2.5(c) that in the meantime, the parties agreed the Award could advance to judgment.

Under my interpretation of the APA, the Motion offers no grounds to modify the Award.[20] The Award must be confirmed.

The next question is when the Award must be paid: the Motion also seeks a stay of this action. Certainly, the Set-Off Litigation will inform the net direction in which funds will ultimately flow between the parties. "This Court possesses the inherent power to manage its own docket, including the power to stay litigation on the basis of comity, efficiency, or simple common sense."[21] Both common sense

---

[19] 2018 WL 5429833, at *6 (quoting *Brace Indus. Contracting, Inc. v. Peterson Enters., Inc.*, 2017 WL 2628440, at *4 (Del. Ch. June 19, 2017)) (other internal quotations and citations omitted). The respondent here misparses *Brace*: the operative language permitted setting off a "claimed amount of any . . . Direct Claim against any amount otherwise payable." *Brace*, 2017 WL 2628440, at *3, *4. The setoff of an unliquidated amount was accomplished by the language permitting the setoff of a "claimed amount of any Direct Claim" – not the "payable" language the respondent relies on.

[20] *See Baltimore Barn Builders*, 1990 WL 237094, at *1; *TD Ameritrade*, 953 A.2d at 731.

[21] *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 397 (Del. Ch. 2009).

and efficiency concerns support staying this action and reducing the parties' disputes to a single judgment.

But Section 2.5(c) of the APA specifically provides that judgment may be entered on the Award, thereby making it collectible separate and apart from Section 2.5(d)'s "prompt payment" of any difference between the Purchase Price and the Estimated Purchase price as "finally determined pursuant to Section 2.5" "[s]ubject to each Party's rights set forth in Section 8.18."[22]  "The FAA not only authorizes, but mandates, that . . . courts confirm arbitration awards by converting them into enforceable judgments through a summary proceeding."[23]  A strict reading of the APA, and the FAA, supports entry of judgment that would permit prompt collection. The parties took on any inefficiencies inherent in this process, by which an arbitration award is not subject to set-offs and is amenable to being reduced to judgment before any set-offs are due and payable, when they agreed to that process. It is not for this Court to interfere in or alter that agreement.

Count II of this action, seeking attorneys' fees, remains pending before Vice Chancellor Glasscock.[24]  I believe my involvement in this matter is at an end, but if I can be of further assistance, please contact my chambers.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

---

[22] APA § 2.5(d).

[23] *Teamsters Local 177 v. United Parcel Serv.*, 966 F.3d 245, 248 (3d Cir. 2020).

[24] When the parties and I spoke last month, I indicated that I thought consolidation would be appropriate.  Upon further reflection as explained in this letter, I have concluded that a final judgment in this matter is the correct course as charted by the APA.

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*