**Opinion issued August 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00629-CV

———————————

**POOLRE INSURANCE CORP., Appellant**

**V.**

**STEWART A. FELDMAN, THE FELDMAN LAW FIRM LLP, CAPSTONE ASSOCIATED SERVICES LTD., CAPSTONE ASSOCIATED SERVICES (WYOMING), LIMITED PARTNERSHIP, AND CAPSTONE INSURANCE MANAGEMENT, LTD., Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-15570**

---

# O P I N I O N

PoolRe Insurance Corp. appeals the trial court's denial of its plea to the jurisdiction and its order confirming an arbitration award as requested by Stewart A. Feldman and The Feldman Law Firm LLP (collectively, Feldman) and Capstone

Associated Services, Ltd., Capstone Associated Services (Wyoming), Limited Partnership, and Capstone Insurance Management, Ltd. (collectively, Capstone).

In two issues, PoolRe contends that the trial court erred in denying its plea to the jurisdiction and granting the appellees' motion to confirm the arbitration award.

We affirm.

## Background

### A. The Parties' Dispute

Feldman, Capstone, and PoolRe were claimants in the underlying arbitration proceeding. The respondents were Scott Sullivan and Frank DellaCroce (collectively, the Doctors), St. Charles Surgical Hospital, L.L.C., St. Charles Holdings, L.L.C., Center for Restorative Breast Surgery, LLC, Sigma Delta Billing, LLC, Sunrise Productions, LLC, Cerberus Insurance Corp., Orion Insurance Corp., and Janus Insurance Corp. A summary of the circumstances that gave rise to the arbitrated dispute, gleaned from the 421-page final arbitration award, follows.

The Doctors created three captive insurance companies named Cerberus, Orion, and Janus, which they had operated since 2011.[1] Over time, the Doctors

---

[1] Texas law defines a captive insurance company as "a company that holds a certificate of authority under this chapter to insure the operational risks of the company's affiliates or risks of a controlled unaffiliated business." TEX. INS. CODE § 964.001(2). Federal tax law allows businesses to deduct ordinary and necessary expenses, which typically include the cost of insurance premiums. *Swift v. Comm'r of Internal Revenue*, T.C.M. (RIA) 2024-013, 2024 WL 378671, at *15 (2024) (citing 26 U.S.C. § 162(c)). Payment of insurance premiums to certain small insurance companies, including captive insurance companies, may qualify for favorable

became concerned about the Internal Revenue Service's increased scrutiny of captive insurance companies. In about 2015, they learned that Feldman and Capstone jointly offered "turnkey" administrative and management services for captive insurance owners and had a program to structure and operate captive insurance companies to qualify for partial tax-exempt status under federal law.[2]

In January 2015, the Doctors met with Feldman to discuss their captive operations and structure. After the meeting, they retained Feldman and Capstone to conduct a "health check-up" of the Doctors' captive operations.

In the summer of 2015, Feldman and Capstone provided their report to the Doctors. Feldman explained that risk distribution was essential for a "true insurance arrangement" to exist and thus for a captive insurance company to qualify for favorable tax treatment. Feldman stated further that, "[t]o achieve risk distribution, the insurance company must distribute its risks among a pool of risks." Feldman and Capstone used PoolRe "for the purpose of satisfying the IRS's risk distribution

---

treatment under an alternative taxing structure but only if they satisfy the necessary criteria. *See id.*

[2] The United States Tax Court has described the relationship between Feldman and Capstone as follows:

> Capstone employed insurance and accounting professionals, and it was closely affiliated with the Feldman Law Firm, LLP (Feldman firm), which provided legal services to Capstone clients. Feldman was the Feldman firm's managing partner and chief executive officer of Capstone's corporate general partner.

*Rsrv Mech. Corp. v. Comm'r of Internal Revenue*, 115 T.C.M. (CCH) 1475, 2018 WL 3046596 at *10 (2018), *aff'd*, 34 F.4th 881 (10th Cir. 2022).

3

requirement." But Feldman and Capstone concealed that they "were under extreme scrutiny from the IRS" when they were soliciting the Doctors' business. Feldman did not disclose to the Doctors any IRS findings regarding PoolRe's inability to satisfy the risk distribution requirement as to Capstone or that Feldman was using PoolRe's risk pool to provide him and his related entities with their primary malpractice and legal expense insurance coverages.[3]

After considering the report, the Doctors hired Capstone to manage their captive insurance companies. In a draft engagement letter, Feldman and Capstone proposed that they structure and operate the Doctors' captive insurance companies to qualify for partial tax-exempt status. The engagement would be for a five-year term.

After the Doctors agreed to the terms of the engagement letter, Feldman and Capstone began the process of redomiciling Cerberus, Orion, and Janus from the Bahamas to Delaware and took over their administration. Feldman and Capstone "expected" and "encouraged" the Doctors to participate in PoolRe, and the Doctors were led to believe that participation in PoolRe was necessary for them to obtain tax-exempt status for the captive insurance companies. For 2016, 2017, and 2018,

---

[3]     PoolRe had no employees and no office, and it "receive[d] no business except that given to it by Feldman and Capstone." Capstone managed PoolRe's day-to-day operations and exercised "certain decision-making authority on behalf of PoolRe."

4

the Doctors elected to have their captive insurance companies participate in PoolRe's reinsurance risk pools.[4]

In June 2018, the United States Tax Court decided *Reserve Mechanical Corp. v. Commissioner of Internal Revenue*, involving the captive operations of another of Feldman's clients. 115 T.C.M. (CCH) 1475, 2018 WL 3046596, at *10 (2018), *aff'd*, 34 F.4th 881 (10th Cir. 2022). The Tax Court decided that "PoolRe was not a bona fide insurance company" and thus, Reserve Mechanical, the client's captive operations, did not achieve risk distribution through its agreements with PoolRe. *Id.* at *47. As a result, Reserve Mechanical's "transactions during the tax years in issue were not insurance transactions." *Id.*

After learning of the Tax Court's decision in *Reserve Mechanical*, Dr. Sullivan conveyed to Feldman that he wanted to immediately liquidate and wind down Cerberus, Orion, and Janus. Feldman responded by identifying an eight-step process to liquidate them by August 2021. The relationship between Dr. Sullivan and Feldman continued to deteriorate, and on January 5, 2020, Feldman formally withdrew from representation. By April 2020, the Doctors had fired Capstone as insurance manager. The Doctors anticipated that for tax years dating to 2015, the

---

4    Reinsurance is "the transfer of all or part of one insurer's risk to another insurer, which accepts the risk in exchange for a percentage of the original premium." *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848 (Tex. 2012). A reinsurer underwrites or insures other insurance companies. *Id.*

IRS would determine that Cerberus, Orion, and Janus were not insurance companies and order payment of back taxes, interest, and penalties.

## B.     Arbitration Proceedings

The arbitrator characterized the Doctors' claims against Feldman, Capstone, and PoolRe as falling into two "broad categories": 1) breach of fiduciary duty and legal malpractice claims arising from Feldman's and Capstone's material nondisclosures and misrepresentations, and 2) conversion and RICO claims arising from Feldman's and Capstone's theft of millions of dollars from their clients. The Doctors sought disgorgement of all fees paid to Feldman and Capstone, the back taxes, interest, and penalties expected to be imposed by IRS as a result of their participation in the captive insurance scheme, and other damages.

Feldman, Capstone, *and* PoolRe initiated arbitration under arbitration agreements "contained in a December 2015 Joint Engagement Letter ("2015 Engagement Letter") and the 2018 and 2019 Stop Loss Reinsurance Agreements and Quota Share Reinsurance Policies."[5] Under those provisions, the parties agreed to submit to arbitration "any and all other controversies, disputes or claims whatsoever" between the claimants and the respondents "arising under or in connection with or related to any of the parties' agreements."

---

[5]     The arbitrator's decision states that PoolRe was not bound by the 2015 Engagement Letter.

In the arbitration award, the arbitrator found Feldman and Capstone jointly and severally liable to the Doctors and the other respondents for "breaching fiduciary duties, committing professional malpractice, making negligent misrepresentations or omissions, and converting funds" and ordered them to pay "losses in the total amount of $1,471,949.21 for the[ir] foregoing wrongful acts." The arbitrator also issued a declaratory judgment for the Doctors and the other respondents and against Feldman, Capstone, and PoolRe declaring that

> Feldman and those in active concert with him, including his related entities, the Feldman Law Firm, all Capstone companies, and PoolRe, cannot tender to the risk pool or pool participants for payment or reimbursement any portion of: (1) [the claims of Feldman's own captive, A.M.Y. Property & Casualty Corp.], (2) the legal fees and expenses incurred in [the related past and pending arbitrations and related court and state bar proceedings], and (3) the damages award [issued in this arbitration].

## C.    Trial Court Proceedings

In their original petition and motion to confirm the arbitration award, Feldman and Capstone asked the trial court to confirm the award as authorized under the Federal Arbitration Act (FAA)[6] and the Texas General Arbitration Act (TAA).[7] They alleged that "[o]ne of the parties' arbitration agreements" stated that venue was proper in Harris County and asserted that they had standing to request confirmation as to PoolRe because they participated as parties in the arbitration. Feldman and

---

[6]    9 U.S.C. § 9.

[7]    TEX. CIV. PRAC. & REM. CODE §§ 171.081, 171.082(a), 171.087.

7

Capstone recounted that the prevailing parties in the arbitration asked a federal district court to confirm the arbitration award as to Feldman, Capstone, and PoolRe, but after concluding that PoolRe never became a party in its proceeding,[8] the federal district court confirmed the award only as to Feldman and Capstone. The prevailing parties then requested leave to request confirmation of the award as to PoolRe in Texas state district court. The federal court granted leave. After the prevailing parties did not file a state action, Feldman and Capstone did so.

Feldman and Capstone argued that because PoolRe "never moved, in any court, to vacate, correct, or modify" the award within the deadlines contained in the FAA and the TAA,[9] the statutes required the trial court to confirm the award.

PoolRe opposed Feldman and Capstone's motion to confirm the arbitration award in a plea to the jurisdiction. In its plea, PoolRe argued that Feldman and Capstone lacked standing to seek confirmation of the arbitration award because the arbitration did not involve a dispute between PoolRe and Feldman or Capstone but one between the prevailing parties in the arbitration (who were not parties to the state court action), on the one hand, and PoolRe, Feldman, and Capstone, on the other.

---

[8] The record indicates that joining PoolRe in the federal proceeding would have destroyed diversity and thus deprived the district court of jurisdiction. *See* 28 U.S.C. § 1332 (conferring federal jurisdiction in cases where complete diversity of citizenship exists).

[9] Both the FAA and the TAA apply to this case. *See* 9 U.S.C. §§ 2–16; TEX. CIV. PRAC. & REM. §§ 171.001–171.098.

PoolRe also maintained that because it had settled its dispute with the prevailing parties to the arbitration, confirming any arbitration award against PoolRe would be moot.

In their response to PoolRe's plea to the jurisdiction, Feldman and Capstone argued that the FAA and the TAA conferred standing on them because both statutes entitled "any party to the arbitration" to move to confirm the award. Also, because PoolRe did not timely move to vacate the award, the TAA and the FAA "mandate[d]" that the trial court confirm the award.

In its reply, PoolRe asserted that the arbitration decision did not adjudicate any case or controversy between PoolRe and Feldman or Capstone, and the federal and state arbitration statutes did not create subject matter jurisdiction where there was no case or controversy.

The trial court denied PoolRe's plea to the jurisdiction and signed an order confirming the arbitration award.

**Standard of Review**

In its first and second issues, PoolRe argues that the trial court erred in confirming the arbitration award because (1) Feldman and Capstone were not adverse to PoolRe in the underlying arbitration and thus lacked standing to have the award confirmed as against PoolRe and (2) the arbitration was moot as to PoolRe. We review de novo a trial court's order confirming or vacating an arbitration award.

9

*See In re Marriage of Piske*, 578 S.W.3d 624, 629 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 77 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 518 S.W.3d 422 (Tex. 2017). Issues of standing and mootness are questions of law that we also review de novo. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149–50 (Tex. 2012).

**Confirmation of Arbitration Award**

PoolRe's arguments assume that a court must examine the dispute resolved by the underlying arbitration to determine issues of justiciability before it can confirm the arbitration award. But implicit in this assumption is a misunderstanding of the purpose of a confirmation proceeding. An application for confirmation of an arbitration award is not a lawsuit—it is just a request, consistent with the agreement that led to the arbitration itself, for a court to enter an order.

The general purpose of the federal and state arbitration statutes is to facilitate arbitration agreements. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 96 (Tex. 2011); *Floyd v. MMWKM Advisors, LLC*, No. 05-22-01147-CV, 2023 WL 8595693, at *5 (Tex. App.—Dallas Dec. 12, 2023, pet. denied) (explaining that purpose of application under either FAA or TAA is "to expedite judicial treatment of matters pertaining to arbitration"). The specific purpose of a confirmation proceeding is to provide a "mechanism[] for enforcing arbitration awards." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); *Guerra v. L&F Distribs., LLC*, 521 S.W.3d

10

878, 885 (Tex. App.—San Antonio 2017, no pet.) ("An action for confirmation of an arbitration award is intended to be a summary proceeding, the purpose of which is to implement the arbitrator's award by making the award a final, enforceable judgment of the court." (citing *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994)).

"Confirming an arbitration award . . . is not to be confused with litigating a dispute over the validity or accuracy of that award . . ., or seeking later to enforce that arbitration award where there is noncompliance." *Teamsters Local 177 v. United Postal Serv.*, 966 F.3d 245, 252 (3d Cir. 2020). Both the FAA and the TAA require the court to enter an order confirming the arbitration award unless the award is vacated, modified, or corrected. *See* 9 U.S.C. § 9; TEX. CIV. PRAC. & REM. CODE § 171.087; *Teamsters Local 177*, 966 F.3d at 248 ("The FAA not only authorizes, but mandates, that district courts confirm arbitration awards by converting them into enforceable judgments through a summary proceeding.").

## A. Feldman and Capstone, as parties to the arbitration proceeding, were entitled to apply for confirmation of the arbitration award.

We first consider PoolRe's argument that Feldman and Capstone lack standing to apply for confirmation of the arbitration award because there is no arbitration agreement between Feldman, Capstone, and PoolRe in the record.

Feldman, Capstone, *and* PoolRe initiated the arbitration proceedings submitting for resolution all disputes, claims and controversies involving the parties.

11

PoolRe does not identify any authority that would require a separate arbitration agreement between itself, Feldman, and Capstone. Feldman and Capstone attached to their application for confirmation a 2019 Quota Share Reinsurance Policy containing an arbitration provision that applied to "[a]ny dispute arising out of or relating to or touching upon this Policy, the relationship among the signatories hereof *or parties related to them* concerning disputes arising out of or related to [the Policy]." (Emphasis added). The policy identifies Capstone as the managing agent and provides that in the event of a dispute, the undersigned "expressly agree[d] that they ha[d] no objection to [Capstone] or [Feldman] joining in any arbitration proceeding provided they may be affected by the outcome of the proceeding." This policy was enough to show that Capstone and Feldman agreed to be bound by one or more of the arbitration agreements before the arbitrator. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) ("[N]onsignatories to an agreement subject to the FAA may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally."); *see also Cerna ex rel. R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585, 589 (Tex. 2025) (explaining that when arbitration agreement signatory attempts to compel nonsignatory to arbitrate, ordinary contract law principles apply to determine whether agreement to arbitrate exists).

In any event, Feldman and Capstone were entitled to apply for confirmation because the arbitration award itself identifies them as parties to the arbitration. The

FAA confers standing to apply for confirmation, modification, correction, or vacatur of an arbitral award on "any party to the arbitration." *See* 9 U.S.C. §§ 9–10. The TAA likewise provides for confirmation "on application of a party." *See* TEX. CIV. PRAC. & REM. CODE § 171.087 ("Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award.").

PoolRe argues that because the federal and state arbitration statutes both require service of an application to confirm an arbitration award on the "adverse party," and PoolRe was not adverse to Capstone or Feldman in the underlying arbitration, Capstone and Feldman cannot apply for confirmation of the award. *See* 9 U.S.C. § 9; TEX. CIV. PRAC. & REM. CODE § 171.094(1). But this proposed interpretation contradicts the plain language of the statutes, which contain no such limitation on a party seeking confirmation of an award. *See* 9 U.S.C. §§ 9–10; TEX. CIV. PRAC. & REM. CODE § 171.087. Based on the plain terms of the statute, the term "adverse party" refers to service of the confirmation application on the adverse party in the confirmation proceeding and does not deprive Capstone or Feldman of standing to pursue confirmation. *See* 9 U.S.C. § 9; TEX. CIV. PRAC. & REM. CODE § 171.094(1).

Because Feldman and Capstone are parties to the arbitration award, they have standing to apply for confirmation of the award. *See* 9 U.S.C. §§ 9–10; TEX. CIV.

PRAC. & REM. CODE § 171.087. Thus, we hold that the trial court did not err in denying PoolRe's plea to the jurisdiction on that ground.

We overrule PoolRe's first issue.

**B.     Feldman and Capstone's interest in having the arbitration award confirmed is not moot.**

PoolRe asserts that its settlement with the Doctors rendered the application for confirmation moot. This assertion, like PoolRe's standing argument, misses the mark because it focuses on the underlying dispute resolved by the arbitration, not on Feldman and Capstone's rights under the arbitration statutes. Under the FAA, "a party seeking to confirm an arbitration award continues to have a live stake in the proceeding, and thus it has standing to seek confirmation." *Teamsters Local 177*, 966 F.3d at 253.

*Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007), sheds light on the nature of a confirmation proceeding and the issues relevant to determining whether to confirm an arbitration award. There, the federal appellate court rejected Deitsch's argument that it should refuse to confirm an arbitration award because of his prior compliance with the award, noting that as a summary proceeding, confirmation was "not intended to involve complex factual determinations." *See id.* at 169.

The Second Circuit observed that a court's confirmation of an arbitration award did "little more than give the award the force of a court order." *Id.* Judicial review did not include consideration of "the subsequent question of compliance"; it

14

was limited to "a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Id.*; *accord Teamsters Local 177*, 966 F.3d at 251–52 (rejecting argument that case-or-controversy requirement was not met because party had agreed to abide by arbitration award and had remedied any violations of cease-and-desist letter). The parties below were involved in an arbitration dispute which was reduced to an arbitration award and the federal confirmation proceeding did not include confirmation of the arbitration award against PoolRe. Thus, a case and controversy remained and could be fully remedied only by the entry of a confirmation order against PoolRe. *See Teamsters Local 177*, 966 F.3d at 251.

We hold that Feldman and Capstone's application for confirmation was not moot. As a result, the trial court did not err in denying PoolRe's plea to the jurisdiction on that ground.

We overrule PoolRe's second issue.

## C. PoolRe did not assert any viable ground for denying the application for confirmation of the arbitration award.

Here, there is no showing that Feldman and Capstone failed to comply with any statutory requirement in filing their application for confirmation. Further, PoolRe did not timely raise any statutory grounds for vacating, modifying, or

15

correcting the arbitration award.[10] Under these circumstances, the trial court was required to confirm the arbitration award. *See* 9 U.S.C. § 9; TEX. CIV. PRAC. & REM. CODE § 171.087; *Nafta Traders*, 339 S.W.3d at 89–90.

## Conclusion

We affirm the trial court's orders denying PoolRe's plea to the jurisdiction and granting Feldman and Capstone's motion for confirmation of the arbitration award.

Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[10] *See* 9 U.S.C. § 12 (motion to vacate, modify, or correct award must be served within three months after award filed or delivered); TEX. CIV. PRAC. & REM. CODE §§ 171.054(c), 171.088(b) (stating time limits for motion to modify, correct, or vacate award).